652 So.2d 1054 (1995)
Susan Ann DeSTEVENS, et al.
v.
HARSCO CORPORATION, d/b/a Patent Scaffolding Co., et al.
No. 94-CA-1183.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1995.
*1055 C. Scott Labarre, Gauthier & Murphy, Metairie, for plaintiffs.
James A. Babst, Brent A. Talbot, and Marc G. Shachat, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for defendants.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
This is an appeal by the plaintiff from a summary judgment for one of the defendants in a wrongful death action. Darren DeStevens was killed by electrocution. He was using a scaffold to do work on the property of Sears, Roebuck and Company when the scaffold touched a powerline. His widow, Susan Ann DeStevens, sued Sears, the scaffold manufacturer and New Orleans Public Service, Inc. (NOPSI), the electric utility operating the powerline. Sears moved for summary judgment on the theory that it had no duty to Mr. DeStevens. The trial court granted the summary judgment. Because landowners do have a duty to those on their property, and because we believe there are genuine issues of material fact as to whether that duty was met in this case, we reverse and remand for further proceedings.
The Sears property at issue included two parking lots. There were seven light poles in the parking lots. Sears contracted with Mr. DeStevens' employer, A.J. Toups Company, to sandblast and paint the seven light poles. Five of the light poles were located in one parking lot and two light poles were *1056 located in the other parking lot. There was some sort of unimproved "driveway" connecting the two parking lots.
The light poles were quite tall and it was necessary to use a scaffold to do the sandblasting and painting work. It would have been obvious to everyone involved, including Sears, that a scaffold would be necessary for the work. In fact, the scaffold was in use for some days before the accident occurred, and Sears knew that the scaffold was in use. Also, as five of the light poles were in one parking lot and two were in the other, it would have been equally obvious to everyone involved, including Sears, that the scaffold would have to be moved from one parking lot to the other.
A NOPSI powerline, which was suspended in the air, ran along part of Sears' property and crossed the unimproved "driveway" which connected the two parking lots. This powerline was uninsulated and carried 8,000 volts of electricity. Thus, the powerline would be extremely dangerous or fatal to touch. (Some powerlines are insulated, although, to an untrained person, particularly looking from the ground, it would not be possible to distinguish an uninsulated from an insulated powerline. See generally Dobson v. Louisiana Power & Light Co., 567 So.2d 569 (La.1990).)
When the sandblasting work was finished on the five light poles in one parking lot, Mr. DeStevens and another Toups employee began to move the scaffold to the other parking lot to perform the sandblasting and painting work on the two light poles there. The scaffold had wheels and the two men simply pushed the scaffold in order to move it. They followed the unimproved "driveway" that connected the two parking lots. This route took them across the path of the powerline. Mr. DeStevens was pushing with his head down so that he could not see the powerline. The top of the scaffold touched the powerline and Mr. DeStevens was electrocuted and killed.
Sears moved for summary judgment. The trial court granted Sears' motion for summary judgment on the theory that Sears had no duty to Mr. DeStevens. In particular, in its Written Reasons for Judgment, the trial court stated that: "This Court is of the opinion that the defendant Sears is free from liability and had no duty to warn the decedent of the hazardous electrical lines above the property."
There are at least genuine issues of material fact as to whether Sears gave any warnings about the powerline to the sandblasters/painters or notified NOPSI of the use of the scaffold in the vicinity of the powerline so that NOPSI might take precautions or whether Sears took any other precautions. Indeed, apparently because Sears' motion for summary judgment was based on the theory that Sears had no duty to take any precautions, Sears did not attempt to establish that it took any precautions.
A summary judgment may be granted only if it is shown that "there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code.Civ.Proc. art. 966(B). We have stressed that summary judgment is a drastic remedy, that it must be used cautiously and that it must not be used as a means of circumventing trial on the merits. E.g., Koenig v. New Orleans Public Service, Inc., 619 So.2d 1127 (La.App. 4th Cir.1993). The burden is on the mover to affirmatively and clearly show that there is no genuine issue of material fact. Id. All doubts as to whether summary judgment should be granted should be resolved against the granting of summary judgment. Id.
The Supreme Court has expressed the point that summary judgment should be used cautiously with the following language:
In Louisiana, however, there is a strong preference for full trial on the merits in non-defamation cases. Because of the resulting heavy burden on the mover, a showing by the mover that the party with the ultimate burden of proof likely will not meet his burden at trial is an insufficient basis for summary judgment....
Summary judgments are to be sparingly granted.... Any doubt is to be resolved against granting the motion.
Sassone v. Elder, 626 So.2d 345, 352 (La. 1993).
*1057 It also is significant that the present case involves a question of negligence. We have held that "questions of negligence are generally inappropriate for disposition by summary judgment." Cooper v. Ceco Corp., 558 So.2d 1355 (La.App. 4th Cir.1990). See also Penalber v. Blount, 550 So.2d 577 (La. 1989) (summary judgment is rarely appropriate for determination of subjective facts such as knowledge).
On appeal, we review the trial court's decision to grant summary judgment on a de novo basis. See, e.g., Reynolds v. Select Properties, Ltd., 634 So.2d 1180 (La.1994). That is, we may not give any deference to the trial court's view that summary judgment was appropriate. Id.
In its written Reasons for Judgment, the trial court distinguished certain powerline electrocution personal injury cases cited by the plaintiff as involving electric utility company defendants rather than landowners as defendants. The trial court also stated that there was no legal authority for imposing upon landowners the same standard of care, with respect to powerlines, as is borne by an electric utility company. We agree that the cases involving electric utility company defendants may not be directly applicable in some or all respects to a case with a landowner as defendant. We also agree that the same standard of care as is borne by an electric utility company may not necessarily be applicable to a landowner. However, the law, including most particularly the decisions of the Supreme Court, imposes a duty on landowners to warn or correct any unreasonably dangerous condition on their property.
In Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), the Supreme Court stated:
[W]e have consistently held that a landowner owes a plaintiff a duty to discover any unreasonably dangerous conditions and to either correct the condition or to warn of its existence.... Whether a particular risk is unreasonable is a difficult question which requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention.
579 So.2d at 939. In Socorro, the plaintiff had been injured after diving off a breakwater bulkhead into shallow water where the water bottom was covered with broken concrete. The Supreme Court held that the City's failure to post a warning sign, which could have been done at a minimal cost, made the condition there unreasonably dangerous. (We note that, in the present case, Sears' brief does not assert that any warning signs were posted by either NOPSI or Sears.)
Our recent decisions have followed Socorro as to the duty of a landowner. "[A] landowner is required to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence." Verdun v. State, Through Dept. of Health and Human Resources, 598 So.2d 1091, 1098 (La.App. 4th Cir.), writ denied, 604 So.2d 1003 (La.1992). "[T]he landowner has a duty to discover any unreasonably dangerous conditions on the premises and to either correct the conditions or warn of the danger." Mundy v. Dept. of Health and Human Resources, 609 So.2d 909, 912 (La. App. 4th Cir.1992), aff'd, 620 So.2d 811 (La. 1993). Accord Dye v. Schwegmann Brothers Giant Supermarkets, 627 So.2d 688 (La.App. 4th Cir.1993), writ denied, 634 So.2d 401 (La.1994). Accordingly, as a landowner, we think Sears did have a duty to Mr. DeStevens to remedy or warn of any unreasonably dangerous conditions. Whether Sears fulfilled that duty is a question of fact, see, e.g., Mundy v. Dept. of Health and Human Resources, 609 So.2d at 912, which we believe must be resolved at trial. As noted above, Sears has not established that it gave any warning, took any other precautions or notified NOPSI so that NOPSI might take precautions and Sears does not assert that there were any warning signs posted.
The only argument that Sears advances on appeal is that the danger presented by the powerline was "obvious" so that Sears had no duty to warn of it or to take any other precaution.[1] However, this same argument was all but categorically rejected, and was at *1058 least severely limited, by the Supreme Court in the Socorro case. In Socorro, the City argued that it had no duty to warn of "obvious dangers." 579 So.2d at 941. However, the Supreme Court held that, under its earlier decision in Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), it was necessary to "review ... the City's duty separate and apart from any knowledge the plaintiff had or should have had of the danger he was encountering." Id. Instead, "the plaintiff's knowledge and conduct is considered only to determine the extent of his comparative negligence." Id.
The Socorro court did acknowledge the possibility of a danger being so obvious that it did not constitute an unreasonable danger. 579 So.2d at 942. In that situation, the landowner would owe no duty or the plaintiff would be 100% at fault. Id. However, in the present case, there is an issue for the jury as to whether the condition on Sears' property was "unreasonably" dangerous. We do not believe that Sears has established beyond the point of a "genuine issue as to material fact," La.Code Civ.Proc. art. 966(B), that an extreme situation of totally one-sided fault of the plaintiff exists.
Moreover, we believe that the main thrust of the Socorro decision, as to the issue of obvious danger, is that, in the usual case, any obvious nature of the danger will determine only the issue of whether the plaintiff was comparatively negligent and not the issue of whether the defendant had a duty. Only in the exceptional case of extremely obvious danger will the defendant be found to have no duty at all to warn of or remedy the danger.
This approach to the obvious danger issue is consistent with the Supreme Court's approach in Dobson v. Louisiana Power & Light Co., 567 So.2d 569 (La.1990). In that case, a novice tree trimmer, apparently assuming that a powerline was insulated, threw his metal-reinforced safety line over the powerline and was electrocuted. Despite the fact that the tree trimmer plaintiff knew the powerline was there, and despite the fact that it should have been "obvious" that touching a powerline with metal could be dangerous, it was found that the defendant was partially liable. The "obvious" nature of the danger was considered with respect to the plaintiff's comparative negligence rather than the defendant's duty. (In fact, the Supreme Court changed the allocation of negligence from 30% defendant and 70% plaintiff to 60% defendant and 40% plaintiff.) Although the Dobson defendant was an electric utility company rather than a landowner, and electric utility companies may have different duties than landowners, that does not affect the basic point that what the Dobson plaintiff knew or should have known about the "obvious" danger was considered only with respect to the plaintiff's comparative negligence rather than the defendant's duty (whatever that duty might be).
Lastly, a case from Alabama, which we find persuasive, reversed a summary judgment for the landowner in a situation quite similar to the present case. In Bush v. Alabama Power Co., 457 So.2d 350 (Ala. 1984), a scaffold was being used to change light bulbs on tennis court light poles at a tennis club. The plaintiff workmen, when pushing the scaffold to a different part of a tennis court, were electrocuted when the scaffold touched an uninsulated powerline. The Alabama Supreme Court made the following comment:
The Bushes and Armstrong [the plaintiffs] argue that the electrical lines were a hidden danger. The Club, on the other hand, contends that the wires were open and obvious. It is undisputed that the wires run directly over the tennis courts and that the view of them is not obstructed in any way from the level of the tennis court. However, there was testimony from Alabama Power's employees that from the ground, it is almost impossible to differentiate an insulated wire from an uninsulated one. There was also testimony that even if a person knows that a wire is uninsulated, it is still impossible to determine whether it is energized. It is the fact that the wire is uninsulated and energized that makes it dangerous. The engineering experts stated that sometimes people, even though they may observe the wires, are not consciously aware of them because they become part of the background and *1059 environs. Whether the lines were a hidden danger or whether they were, in fact, open and obvious is a question of fact within the province of the jury. There is evidence that although the wires were in clear view, they were not "seen," and the fact that they were energized and uninsulated was not obvious. There is also evidence that the view of the wires was clear and unobstructed and that Bush and Armstrong should have seen them and realized the danger.
457 So.2d at 354-55. The Louisiana Supreme Court has made a similar comment about the danger of a powerline in the Dobson case: "For the average citizen there is no way of knowing whether the wire is harmless or lethal until it is too late to do anything about it." 567 So.2d at 572 n. 1. As we have noted above, Dobson was a suit against an electric utility, rather than a landowner, but that does not affect the nature of powerlines or the import of the Dobson court's comment about powerlines. Both Bush and Dobson emphasize that there are factual issues as to just how obvious is the danger of a particular powerline.
In sum, we hold that Sears did have a duty as landowner to warn or remedy any unreasonable danger on its property, that Sears owed this duty to Mr. DeStevens, and that there are genuine issues of material fact as to whether the danger was unreasonable and as to whether Sears fulfilled its duty as landowner.
For the foregoing reasons, we reverse the judgment below and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Sears also argues that it is not liable for the negligence of its contractor, Toups, but the plaintiff does not raise that as an issue or so argue on appeal.