PATRICIA RIVET MURRAY, Judge.
|! This is a personal injury suit by a tenant, Billie Warren, against her landlord, Dr. Robert Kenny, and his insurer.[1] From the trial court’s decision granting Dr. Kenny’s motion for summary judgment, Ms. Warren appeals. Finding a genuine issue of material fact exists, we reverse and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
At the time of the accident in question, Ms. Warren was employed by Dr. Kenny as a medical assistant and living in an apartment owned and operated by him. Her apartment was located in the same two-story building as Dr. Kenny’s medical office. His office was located on the first floor, and her apartment was located on the second floor. Another apartment that Dr. Kenny leased to Mark Shanks also was located on the second floor.[2] Ms. Warren had no lease. She was allowed to live in the apartment as an employment incentive without paying rent or utilities.
According to Ms. Warren, Dr. Kenny provided his tenants with access to a community laundry facility — a washer and dryer that he owned and that were | ^Located on Mr. Shanks’ open second floor balcony. She claimed that Dr. Kenny provided his tenants with access to the laundry facility not by stairs, but rather by a ladder. She explained that Dr. Kenny had his maintenance man, Keith Sparrow, attach an A-frame (carpenter) ladder with a cable lock to the iron work on the exterior wall under the balcony. She further claimed that Dr. Kenny instructed the tenants, including her, to use the attached, unopened, A-frame ladder to access to the community laundry facility.[3]
On the day of the accident, Ms. Warren woke up early to do her laundry. Accord *844 ing to Ms. Warren, she successfully ascended the ladder and placed her laundry in the washer; as she was attempting to descend the ladder she fell. In her deposition, Ms. Warren testified as follows regarding how the accident occurred:
Q: Tell me about the incident in the sense that your petition alleges that you were descending some stairs coming from a laundry room when the railing gave way and caused you to fall to the ground resulting in injury,[4] Describe for me where the stairs were.
A. Okay.... As you get to the back of the building, the apartment on that side [Mr. Shanks’ apartment] has a balcony that is outside of the apartment. The stairs were — the ladder was connected to a[n] iron | owork that you would put on a window or a door, and I had already safely made it up the steps to— up the ladder to put my clothes in a washing machine and was descending the ladder.
There were — there are railings up at the top. My hand was on top of the railing, and my feet was [ (sic) ] on the ladder. The railing gave loose, and in the process of the railing gave loose there was nothing for me to physically hold on to. As a result of that, I went tumbling down.
The photographs taken the date of the accident reflect that both Ms. Warren and the railing fell to the ground. As a result of the accident, Ms. Warren broke her femur. This suit followed.
After answering the suit and denying liability, Dr. Kenny filed a motion for summary judgment asserting that he owed no duty to warn Ms. Warren of the open and obvious danger of ascending and descending an A-frame tethered and locked ladder to access a neighboring tenant’s second floor balcony to do her laundry. In connection with the motion, Dr. Kenny introduced the four depositions that were taken in this case — the depositions of the parties (Ms. Warren and Dr. Kenny), the other tenant (Mr. Shanks), and Dr. Kenny’s maintenance man (Mr. Sparrow). He also introduced copies of photographs of the ladder taken by Ms. Warren’s friend on the date of the accident.[5]
Although Dr. Kenny acknowledged the existence of a factual dispute between the parties regarding the purpose for the placement of the ladder,[6] he | contended *845 that the factual dispute was not material. Rather, citing Ms. Warren’s deposition testimony that she “didn’t think the whole [ladder] setup was safe,” he contended that she was aware before her fall that utilizing the ladder to enter her neighbor’s porch was an unsafe activity. He further- contended that despite her awareness of the inherent risks,[7] Ms. Warren had made a conscious decision to climb the ladder. He thus argued that he owed no duty to warn her of such an open and obvious condition.
Opposing the motion, Ms. Warren alleged that there were genuine issues of material fact regarding what actually had led to the placement of the ladder, what the intended use of the ladder was, and whether Dr. Kenny owed a duty to her as a result of the conversations between them regarding the washer-dryer situation. She further alleged that the conditions in question were not so open and obvious as to preclude a finding of negligence on Dr. Kenny’s part. Finally, she alleged that summary judgment was premature because discovery was ongoing and because she was in the process of retaining an expert.
Following the hearing on the motion, the trial court ruled from the bench in Dr. Kenny’s favor. The trial court rejected the argument that the factual dispute regarding the purpose for the placement of the ladder created a genuine issue of material fact. Rather, the trial court determined that it was “an open and obvious danger to climb a ladder to the second floor to climb over three railings to go into a |5porch to wash clothes,” and thus concluded that Dr. Kenny had no duty to Ms. Warren. This appeal followed.
DISCUSSION
The issue presented is whether the trial court correctly granted summary judgment dismissing this suit. The motion for summary judgment is a procedural device designed to avoid a full-scale trial when there is no genuine issue of material fact. Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546-47. *846 “When sufficient time has been allowed for discovery, the courts will assess the proof submitted by the parties, equally without the former presumption in favor of trial on the merits, in order to dismiss meritless litigation.” Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 5 (La.2/20/04), 866 So.2d 228, 232, n. 2. “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish National Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)).
Appellate courts review summary judgment de novo, using identical criteria to that used by the trial court in considering whether summary judgment is appropriate. Id. The rules governing summary judgments are found in La. C.C.P. arts. 966 and 967.[8] In determining whether summary judgment is appropriate the | fitwo issues a court must resolve are whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, p. 5 (La.7/6/04), 880 So.2d 1, 5. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A “material” fact is “one that would matter on the trial on the merits.” Id. The applicable substantive law determines materiality. Id.
Summarizing the applicable substantive law regarding the duty of a landowner, the Louisiana Supreme Court in Eisenhardt v. Snook, 08-1287, pp. 5-6 (La.3/17/09), 8 So.3d 541, 544-45, stated:
It is well-settled that a landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and to either correct the condition or warn of its existence. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406, 410 (La.1976)
Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in[9] the determina *847 tion of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. Dauzat v. Cumest Guillot Logging, Inc., 08-0528 (La.12/2/08), 995 So.2d 1184; Hutchinson v. Knights of Columbus, 1703 — 1533 at p. 9 (La.2/20/04), 866 So.2d 228, 234; Pitre v. Louisiana Tech University, 95-1466, 95-1487 at p. 11 (La.5/10/96), 673 So.2d 585, 591.
Simply stated, the duty a landowner owes to a person injured by a defect on his property hinges on how obvious the defect is to all comers. Pitre, supra.
In this case, the trial court granted summary judgment in Dr. Kenny’s favor based on its conclusion that “there’s no basis in law for finding him liable because it was an open and obvious dangerous situation.” On appeal, Ms. Warren contends that there are genuine issues of material fact, including the purpose for placement of the ladder and the integrity of the railing. She further contends that Dr. Kenny’s actions — ordering the ladder be placed on the wall for the purpose of allowing tenants to access the community laundry facility and instructing tenants, including her, to use the ladder for that purpose — were sufficient to create a duty. See Posecai v. Wal-Mart Stores, 99-1222 (La.11/30/99), 752 So.2d 762. She further contends that the trial court erred in finding that the existence of an open and obvious dangerous condition precludes her recovery. In support, she cites DeStevens v. Harsco Corp., 94-1183 (La.App. 4 Cir. 3/16/95), 652 So.2d 1054, for the proposition that the open and obvious nature of the dangerous condition generally only determines the issue of the plaintiffs comparative fault, not the defendant’s duty.[10]
In granting the motion for summary judgment, the trial court’s finding that no duty existed was based on the jurisprudence holding that “the duty which a landowner owes to persons entering his property is governed by a standard of | ^reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous.” Socorro v. City of New Orleans, 579 So.2d 931, 941 (La.1991).[11] This is referred to as the “open *848 and obvious” defense. As this court has recently noted, “the factfinder may conclude that an open and obvious defect does not present an unreasonable risk of harm.” Burns v. CLK Investments V, L.L.C., 10-0277, p. 19 (La.App. 4 Cir. 9/1/10), 45 So.3d 1152, 1163-64 (emphasis in original).
We note that in the instant case, the alleged dangerous condition consisted of not only the attached ladder, but also the removable railing on Mr. Shanks’ balcony. The photographs taken on the day of the accident reflect that both Ms. Warren and the railing fell to the ground. The railing was affixed only by “screen door” hooks so that it could be removed when necessary to allow large items (like furniture) to be moved in and out of the apartment, which had very narrow hallways. Ms. Warren argued that “[a]ny reasonable lay person could opine that a three foot piece of railing should not be secured, with any expectation of holding, with only a screen door hook on one side and eyelet on the other.”
In her deposition, Ms. Warren testified that, before her accident, she was not aware of any problem with the railing:
Q. Now, the railing that we said was loose and that gave way, had you ever had any problems with that before?
A. Never.
|9Q. So you had no idea that the railing was loose?
A. No, sir.
Q. So I guess it’s safe to say you didn’t report to Kevin [Sparrow] or Dr. Kenny that the railing was loose?
A. If I had known that railing was loose, I would have never did it.
Q. You wouldn’t have gone up there?
A. Never.
In deciding the motion for summary judgment, the trial court reasoned as follows:
[T]he railing issue it gives me a little bit of pause.[12] The fact of the matter is the very act of climbing this ladder and climbing over railings to wash clothes is a dangerous activity that she undertook herself, so even' accepting everything that she [Ms. Warren] says is true, I find that there’s no basis in law for finding him [Dr. Kenny] liable because it was an open and obvious dangerous situation.
The trial court specifically rejected Ms. Warren’s contention that the parties’ dispute regarding the purpose for the placement of the ladder created a genuine issue of material fact. Instead, the court found that the photographs of the ladder setup taken the day of the accident reflect that climbing up and down this ladder was “a dangerous and difficult thing to do” and that it was “unreasonable to think that one would not get hurt climbing up that ladder and stepping on to that porch, especially as you’re going up and down with a basket of *849 clean or dirty clothes. The risk that comes with that is that you’re going to fall.”
|inWe agree with the trial court that the risk of climbing a ladder up the side of a building to a second floor balcony while carrying a basket of laundry might reasonably be deemed an open and obvious danger. Nevertheless, we find that the impermanent manner in which the balcony railing was secured in this case was not an open and obvious danger. Moreover, the fact that the ladder was attached to the side of the building did not put Ms. Warren on notice that the balcony railing, which was secured only by “screen door” hooks, would likely come loose if she attempted to climb over or under it.[13]
Although good judgment may have dictated, as the trial court reasoned, that Ms. Warren do her laundry someplace else, that fact does not absolve Dr. Kenny from potential liability as a matter of law. Under these circumstances, a fact finder reasonably could determine that Dr. Kenny, assuming he told Ms. Warren she could use the washer and dryer on Mr. Shanks’ balcony, also should have warned her that the railing was secured only by “screen door” hooks so that it could easily be removed. Whether or not he had a duty to do so under the particular circumstances presents a genuine issue of material fact that precludes summary judgment. Stated otherwise, even though Ms. Warren’s decision to use the ladder and climb over (or under) the railing may have been unreasonable — as the trial court found— and may ultimately result in the fact finder allocating a substantial percentage of the fault to her, we cannot conclude on the basis of this record that it precludes her recovery as a matter of law. We therefore find the summary judgment was improperly granted.[14]
In DECREE
For the foregoing reasons, the judgment of the trial court is reversed; and this matter is remanded for further proceedings.
REVERSED AND REMANDED
ARMSTRONG, C.J., dissents.
McKAY, J., dissents.
TOBIAS, J., concurs in the result.

. For ease of discussion, the two defendants. Dr. Kenny and his insurer, Atlantic Casually Insurance Company, are collectively referred to in this opinion as "Dr. Kenny.”

. Dr. Kenny also owned two adjacent buildings and leased apartments in those buildings. He, therefore, had multiple tenants residing in the area.

. In her deposition, Ms. Warren testified regarding the following time line that resulted in the placement of the ladder on the exterior wall. She stated that Dr. Kenny orally informed her that she could use the community washer and dryer that he owned. When she first moved into her apartment, the community washer and dryer were located in separate places. The dryer was in her apartment; the washer was on the open balcony of the adjacent (Mr. Shanks’) apartment. On several occasions, Ms. Warren found Will, another of Dr. Kenny's employees who was also a tenant, inside her apartment using the community dryer. On one of the occasions, she and her former boyfriend (who was a police officer) walked into the apartment and found Will using the dryer. Believing Will to be a burglar, Ms. Warren’s boyfriend almost shot him. Ms. Warren and her boyfriend complained to Dr. Kenny regarding this dangerous situation. In response, Dr. Kenny had his maintenance man, Mr. Sparrow, move the dryer out of her apartment and put it on the open balcony of the next door apartment. As a result, both the washer and dryer were outside on the neighbor’s balcony. Since the laundry facility was located on another tenant's (Mr. Shanks’) open balcony, the only way to access it was by passing through the other tenant’s apartment. *844 To provide access to the laundry facility without having to bother the other tenant, Dr. Kenny instructed his maintenance man, Mr. Sparrow, to place a ladder on the wall under the balcony. According to Ms. Warren, the placement of the ladder on the wall coincided with the movement of the dryer from her apartment. She estimated that it occurred about a month and a half before the accident. Ms. Warren stated that she (as well as other tenants)was instructed to use the ladder to access the community laundry facility and that Dr. Kenny was aware that she was using the ladder. Dr. Kenny had Mr. Sparrow move the ladder immediately after the accident.

. In her petition, Ms. Warren alleged that the accident occurred when she was "descending a set of stairs and coming from the laundry room” and "the railing gave way and caused her to fall to the ground.” She further alleged, inter alia, that Dr. Kenny was liable in setting up the laundry room in a place where the sole way to access it was through the dangerous set of stairs. Contrary to the allegations in the petition, it is undisputed that the accident in question did not involve stairs; rather, it involved an attached, A-frame ladder and a balcony railing.

. Although reference is made by the parties and the deponents to a surveillance video, a copy of the video was not introduced. Apparently the video shows a portion of Ms. Warren’s accident.

. According to Dr. Kenny, the ladder tethered to the building was placed there so that one of the workers performing repairs to the building could use it since they were working in *845 the area. The ladder was secured to the building so that no one would steal it and so that the workers would have access to it without needing the key to the adjacent shed, which was kept locked. Dr. Kenny denied authorizing Ms. Warren to use the ladder to access the laundry facility on the neighbor’s balcony. Dr. Kenny testified that there was no community washer and dryer for the tenants; rather, each apartment had its own washer and dryer connections. Dr. Kenny did not supply any tenants with washers and dryers. The dryer that was originally in Ms. Warren’s apartment did not belong to her; it was left by the previous tenant, who gave the dryer to Mr. Sparrow, who was Dr. Kenny’s maintenance man and also a tenant. Mr. Sparrow allowed his dryer located in Ms. Warren's apartment to be moved to the second floor porch of another tenant, Mr. Shanks, where it was located at the time of Ms. Warren’s accident. Until Ms. Warren fell, Mr. Shanks was unaware that she had been using the washer and dryer on his porch.

. Dr. Kenny also pointed out that Ms. Warren had numerous safer alternative options to laundry her clothes. First, assuming (as she testified to) that she had permission to use the laundry facilities on her neighbor’s balcony, she could have waited until later that morning when her neighbor was awake, knocked on the door, and passed through her neighbor’s apartment to get to the porch. Second, she could have gone to the laundromat. Third, she could have purchased her own washer and dryer and had them installed in the apartment, which had washer and dryer connections. He also pointed out Ms. Warren acknowledged in her deposition that the reason she decided to climb the ladder to do her laundry was because it was inconvenient to do her laundry at another time (later when her neighbor was awake) or elsewhere (at a nearby laundry mat) and because she could not afford to buy her own washer and dryer.

. Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The burden of proof remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.C.C.P. art. 966(C)(2). Article 967 provides that an adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.CodeCiv. Proc. art. 967(B).

. As the Supreme Court further stated, the determination of whether a condition is un *847 reasonably dangerous requires consideration of the following factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff’s activities in terms of its social utility or whether it is dangerous by nature. Hutchinson, 03-1533 at pp. 9-10, 866 So.2d at 234-35.

. In DeStevens, this court found a material factual issue as to just how obvious the danger presented by the defective condition — a power line — was, and thus concluded that "there is an issue for the jury as to whether the condition on [the landowners’] ... property was 'unreasonably' dangerous.” DeStevens, 94-1183 at p. 5, 652 So.2d at 1058. Continuing, this court found that the landowner had not “established beyond the point of a 'genuine issue of material fact,’ La.Code Civ. Pro. art. 966(B), that an extreme situation of totally one-sided fault on the plaintiff exists.” Id.

. In Socorro, the Louisiana Supreme Court "acknowledge[d] the possibility of a danger being so obvious that it did not constitute an unreasonable danger” and acknowledged "[i]n that situation, the landowner would owe no duty or the plaintiff would be 100% at fault.” DeStevens, 94-1183 at p. 5, 652 So.2d at 1058 (emphasis in original).As this court has observed, "the main thrust of the Socorro decision, as to the issue of obvious danger, is that, in the usual case, any obvious nature of the danger will determine only the issue of whether the plaintiff was comparatively negligent and not the issue of whether the defendant had a duly. Only in the exceptional case *848 of extremely obvious danger will the defendant be found to have no duty at all to warn of or remedy the danger.” DeStevens, 94-1183 at p. 6, 652 So.2d at 1058. See also Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 9.12[3](2nd ed.2010)(noting that "in the vast majority of cases in which the plaintiff would have been barred from recovery under assumption of the risk, his or her recovery is substantially reduced under comparative fault.”)

. Addressing the railing issue, the trial court distinguished the situation presented in this case from one in which a guest on the balcony sits on the railing, leans on the railing, or puts his or her drink on the railing and the railing falls off. Under those scenarios, the trial court acknowledged that the guest would have a claim. The trial court, however, rejected the suggestion that Ms. Warren’s actions were similar to those of the guest because she was "climbing over the railing to gain access to a ladder [that was attached to the wall] to go down.”

. In her deposition, Ms. Warren testified that she would not go over, but rather would "go under it [the railing]” and put her feet down and hold on and come down the ladder.

. Given our finding that the granting of summary judgment was improper because there is a genuine issue of material fact with regard to whether Dr. Kenny had a duty to warn Ms. Warren about the railing, we do not address Ms. Warren’s alternate contention that the trial court’s grant of summary judgment was premature. We note, however, that Ms. Warren contends she was in the process of retaining an expert, apparently to inspect the railing.