| | | |
|---|---|---|
| **SHERRELL JOHNSON** | * | **NO. 2022-CA-0804** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **EVANSTON INSURANCE** | * | |
| **COMPANY, DENYCE MOSS** | | **FOURTH CIRCUIT** |
| **AND JOHN MOSS** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-02484, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Jeffrey T. Greenberg
JEFFREY T. GREENBERG, APLC
10001 Lake Forest Blvd., Suite 202
New Orleans, LA 70127

J. Michael Daly, Jr.
WALKER DALY, LLP
3939 North Causeway Boulevard, Suite 200
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT

Phoebe A. Hathorn
Patrick J. McShane
Danica B. Denny
Kathleen P. Rice
FRILOT LLC
1100 Poydras Street
3700 Energy Centre
New Orleans, LA 70163-3600

      COUNSEL FOR DEFENDANT/APPELLEE

      **REVERSED AND REMANDED**
      **June 14, 2023**

This is a premises liability suit arising out of an alleged fall down a staircase in a residential building. Defendants—the building's owners, Denyce and John Moss (collectively "the Mosses"), and their insurer, Evanston Insurance Company—filed a summary judgment motion. From the trial court's September 1, 2022 judgment granting the summary judgment motion, plaintiff—Sherrell Johnson—appeals. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, the Mosses purchased a four-unit, residential building located on Banks Street in New Orleans, Louisiana. They occupied one of the units as their residence and rented the other three units. In February 2019, Ms. Johnson's son, Terrance Johnson, inquired about renting one of the Mosses' available rental units—the unit with a municipal address of 4328 Banks Street (the "Rental Unit"). The Rental Unit was located on the second floor of the building.

Inside the Rental Unit was a door that opened into a staircase. The staircase led to a laundry room that was located on the first floor of the building. The

staircase door had a deadbolt lock, which opened with a key. A photograph, taken by Ms. Johnson's expert after the alleged accident, shows that there was no landing at the top of the staircase:[1]



When Ms. Moss took Mr. Johnson on a tour of the Rental Unit, she showed him the staircase leading to the first floor laundry room. Following the tour, Mr. Johnson signed a Rental-Credit Application.

In March 2019, Ms. Moss signed a Residential Lease with Mr. Johnson for the Rental Unit (the "Lease"). After signing the Lease, Ms. Moss scheduled a meeting with Mr. Johnson for three reasons: (i) to perform a final walk through of the Rental Unit; (ii) to receive payment from Mr. Johnson of the first month's rent; and (iii) to give Mr. Johnson all the keys to the Rental Unit.

On the morning of the scheduled meeting, Ms. Moss arrived at the Rental Unit before Mr. Johnson. When she arrived, she unlocked the front door of the Rental Unit and put the key into the deadbolt lock on the staircase door. According to Ms. Moss, she put the key into the staircase door because she planned to show

[1] The photograph is one of several taken by Ms. Johnson's expert; these photographs were submitted in opposition to the summary judgment motion.

the staircase to Mr. Johnson again that morning.[2] Because Mr. Johnson still had not arrived, Ms. Moss returned to her unit, which was in the same building.

Meanwhile, Mr. Johnson and his mother, Ms. Johnson, arrived and let themselves inside the Rental Unit. After entering the Rental Unit, they walked through the first two rooms—the living room and the bedroom—and entered the kitchen. At that point, Mr. Johnson turned around to meet with Ms. Moss, who had returned. According to Ms. Moss, she and Mr. Johnson met on the porch of the building.

While Mr. Johnson and Ms. Moss were meeting, Ms. Johnson took a self-directed tour of the Rental Unit. Ms. Johnson described her actions as "checking it out." In so doing, Ms. Johnson encountered the staircase door with the key in the deadbolt. She opened the door. When she did so, she saw darkness. Without asking anyone where the light switch was or for permission to enter, Ms. Johnson took a step into the darkness and allegedly fell down the staircase. Ms. Moss and Mr. Johnson heard Ms. Johnson's call for help. They found her on the landing at the bottom of the staircase.[3] This suit followed.

In her petition, Ms. Johnson averred that she was lawfully on the premises of the Rental Unit, that she opened an unmarked door, and that she fell down the

---

[2] According to Ms. Johnson, she could not recall if the door was locked. In contrast, Ms. Moss testified that she left the key in the door that morning, but she did not unlock it.

[3] According to Ms. Johnson, Ms. Moss saw that she was present before she opened the staircase door. In contrast, Ms. Moss testified that she first saw Ms. Johnson after the alleged accident when she and Mr. Johnson found Ms. Johnson at the bottom of the staircase. Regardless, it is undisputed that Ms. Moss and Ms. Johnson never engaged in a conversation before the alleged accident.

staircase that was directly behind the door. She further averred that the staircase had no hand railings and was dark and that that there was no warning that a staircase was behind the door. She averred that this condition constituted a defect in the premises, which caused her damages, and that the Mosses were negligent in connection with her fall down the staircase in multiple respects.

After answering the suit and engaging in discovery, Defendants filed a summary judgment motion. In support, they asserted three separate grounds:

- Ms. Johnson was trespassing on the Mosses' property at the time of the alleged accident, and the Mosses only owed Ms. Johnson a duty to refrain from willful or wanton injury—conduct which was not alleged by Ms. Johnson;

- The Mosses owed no duty of care to protect Ms. Johnson from open and obvious conditions like a dark stairway behind a closed, locked door; and

- The Mosses could not be held liable for Ms. Johnson's alleged fall, because Mr. Johnson assumed responsibility for the apartment's condition pursuant to the terms of the Lease, as permitted by La. R.S. 9:3221.[4]

In support of its summary judgment motion, Defendants submitted the following: (i) the petition; (ii) excerpts from the deposition testimony of Ms. Moss, Mr. Moss, and Ms. Johnson; and (iii) Ms. Moss's affidavit, which included as exhibits copies of the Rental/Credit Application, the Lease, and a photograph of the Staircase. In her affidavit, Ms. Moss attested to the following:

---

[4] La. R.S. 9:3221 provides as follows:

> Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

- According to Clause 5 of the Residential Lease, Terrance Johnson was required to pay the prorated first month's rent prior to receiving the keys for the [Rental Unit].

- Clause 11 of the Residential Lease states, in part, as follows: Tenant will: . . . (2) immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware . . . Tenant has examined the premises, including appliances, fixtures, carpets, drapes, and paint, and has found them to be in good, safe, and clean condition and repair, except as noted in the Landlord Tenant Checklist.

- Inside the [Rental Unit], there is a door with a lock that opens to a stairwell which leads to a laundry room on the first floor of the building. The door to the stairwell opens to the right, and immediately to the left is a light switch which turns on a light in the stairwell.

In opposition to the summary judgment, Ms. Johnson submitted excerpts from her deposition testimony and the report of her expert—Kevin Vanderbrook, a professional civil engineer who she retained to examine the staircase. Ms. Johnson also attached photographs taken by her expert and her expert's affidavit. In his report, Mr. Vanderbrook opined that the staircase violated many building codes and presented safety issues; he observed as follows:

> The dimensions of the treads and risers, lack of handrails, lack of a landing and lack of proper headroom clearance at the bottom of the stairs are all provisions which would render these stairs non compliant with many building codes. The original 1927 building code is violated by the tread and riser heights and lack of handrails. Although . . . it would be difficult to add a landing at the top of the stair, a warning to indicate to users of the stairs that no landing was present or addition of handrails would have been relatively simple additions to the stairwell to improve the safety.

Following a hearing, the trial court granted Defendants' summary judgment motion. Complying with La. C.C.P. art. 966(C)(4)'s requirement that "[i]n all cases, the court shall state on the record or in writing the reasons for granting or denying the motion," the trial court stated in its oral reasons for judgment that it was unreasonable for Ms. Johnson to go down the steps without attempting to find

5

the light and that the darkness Ms. Johnson confronted when she opened the staircase door was an open and obvious condition. This appeal followed.

**DISCUSSION**

Although Ms. Johnson assigns multiple errors, the dispositive issue in this case is whether the trial court erred in granting Defendants' summary judgment motion.[5]

*Summary Judgment Principles and Standard of Review*

An appellate court reviews a trial court's judgment on a summary judgment motion *de novo. See Planchard v. New Hotel Monteleone, LLC*, 21-0347, p. 2 (La. 12/10/21), 332 So.3d 623, 625. In so doing, an appellate court applies the same criteria that govern the trial court's decision as to whether a summary judgment motion should be granted—"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Planchard*, 21-00347, pp. 2-3, 332 So.3d at 625.

The statutory provision that governs a summary judgment motion states that such motion "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The

---

[5] Ms. Johnson assigns as error the following:

1. The Trial Court erred in granting defendant's Summary Judgement [sic] dismissing plaintiff's claims.

2. The Trial Court erred in determining, without sufficient evidence, that the defective stairs, located behind a closed door, in a dark stairwell, without any warning, constituted an open and obvious condition.

3. The Trial Court erred in granting defendants' Summary Judgment when the plaintiff had retained an expert who issued a report, shared with the defendant, which found a defective/unreasonably dangerous condition.

6

burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.[6]

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to pierce the pleadings and to assess the evidence to determine if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on the issue, and the granting of summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Id.* As this court has observed, "[t]he determination of whether a fact is material turns on the applicable substantive law." *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270.

---

[6] La. C.C.P. art. 966(D)(1) provides as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

*Negligence and Premises Liability Principles*

Ms. Johnson's claims are tort claims—negligence under La. C.C. art. 2315, and premises liability under La. C.C. art. 2317.1.[7] Liability for both type of tort claims is determined by applying the duty/risk analysis. *Farrell v. Circle K Stores, Inc.*, 22-00849, p. 5 (La. 3/17/23), ___ So.3d ___, ____, 2023 WL 2550503, *3. Under the duty/risk analysis, a plaintiff must prove all of the following five elements:

1. The defendant had a duty to conform his conduct to a specific standard (the duty element);

2. The defendant's conduct failed to conform to the appropriate standard (the breach element);

3. The defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);

4. The defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and

5. Proof of actual damages (the damages element).

*Id.*[8]

The first element—the duty element—presents the legal question of whether the plaintiff has any law—statutory, jurisprudential, or arising from general

---

[7] La. C.C. article 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. article 2317.1 provides, in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

[8] Additionally, a claim under La. C.C. art. 2317.1 requires proof that the defendant had actual or constructive knowledge of the defect.

principles of fault—to support the claim that the defendant owed him a duty.

*Farrell*, 22-00849, p. 6, ___ So.3d at ____, 2023 WL 2550503, *4. The second

element—the breach element—presents either a factual question or a mixed

question of law and fact. *Farrell*, 22-00849, pp. 6-7, ___ So.3d at ___, 2023 WL

2550503, *4. To decide the breach element, Louisiana courts apply a risk/utility

balancing test, which has been synthesized to a consideration of four pertinent

factors:

    i.   The utility of the complained-of condition;

    ii.   The likelihood and magnitude of harm, including the obviousness and apparentness of the condition;

    iii. The cost of preventing the harm; and,

    iv. The nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.

*Id.*

Here, the trial court, in granting Defendants' summary judgment motion, did

so based on the pre-*Farrell*[9] jurisprudence, which recognized that "no legal duty is

owed because the condition encountered is obvious and apparent to all and not

unreasonably dangerous." *Bufkin v. Felipe's Louisiana, LLC*, 14-0288, p. 12, n. 3

(La. 10/15/14), 171 So.3d 851, 859. Stated otherwise, the trial court, agreeing with

Defendants, found that the Mosses had no duty to protect Ms. Johnson from an

open and obvious condition—defined by Defendants as a dark stairway behind a

---

[9] In *Farrell*, the Supreme Court granted writs "to clarify once and for all, a confusion-laden area of negligence law: the so-called 'open and obvious' defense in the context of a motion for summary judgment." *Farrell*, 22-00849, p. 10 (La. 3/17/23), ___So.3d. ___, ___, 2023 WL 2550503, *9 (Weimer, C.J., concurring).

closed, locked door. The Louisiana Supreme Court, however, recently held in *Farrell* that this analysis of the open and obvious defense is inaccurate.[10]

In *Farrell*, the Supreme Court clarified that, despite its prior statements to the contrary, "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition" and that "[t]here is, with limited exception, the duty to exercise reasonable care and to keep that which is within our custody free from an unreasonable risk of harm." *Farrell*, 22-00849, p. 13, ___ So.3d at ___, 2023 WL 2550503, *8. Nonetheless, the Supreme Court, in *Farrell*, observed that its clarification did not mean that summary judgment would never have been been appropriate on the issue of an unreasonably dangerous condition. Rather, "the relegation of the 'open and obvious' defense to its proper role in assessing the likelihood of the harm element of the risk/utility analysis will not preclude summary judgment in the appropriate case." *Farrell*, 22-00849, p. 16, ___So.3d. at ___, 2023 WL 2550503, *10 (Weimer, C.J., concurring). An appropriate case, according to the Supreme Court, is defined as follows:

> Summary judgment on the issue of an unreasonably dangerous condition is warranted upon a finding that no reasonable juror could have found that the defendant was in breach of the duty. If the defendant meets that burden of proof, and the plaintiff fails to establish that he or she will be able to establish the breach element at trial, summary judgment in favor of the defendant is mandated.

*Farrell*, 22-00849, p. 16, ___So.3d. at ___, 2023 WL 2550503, *9. To determine whether this is an appropriate case, the four-part risk/utility balancing test must be applied.

*Part One—Utility of the Complained of Condition*

---

[10] The Supreme Court's decision in *Farrell* was issued in March 2023—after the trial court's judgment in this case was rendered and the parties' briefs were filed in this case.

Ms. Johnson contends that there is no utility in having an inherently dangerous staircase without a proper landing, handrails, or accessible light switch and located behind a closed, unmarked door. But the jurisprudence has held that if the complained-of-condition was "'meant to be there,' it often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Farrell*, 22-00849, p. 7, ___So.3d. at ___, 2023 WL 2550503, *4. Such is the case here. The staircase was intentionally placed in the building to allow the tenant to use the first floor laundry room. The complained-of-condition has some social utility.

*Part Two—Likelihood and Magnitude of the Harm, including the Obviousness and Apparentness of the Condition*

Ms. Johnson contends that the likelihood and magnitude of harm from the condition is great, especially when, as here, the staircase is not readily obvious or apparent to those who open the door inward toward the staircase. The trial court, accepting Defendants' position that there was an open and obvious condition, focused on two factors—the darkness as the open and obvious condition; and Ms. Johnson's unreasonable conduct in stepping into the dark without looking for the light switch. We separately address each.

<u>The Darkness</u>

Contrary to the trial court's conclusion, we find the complained-of-condition is not simply the darkness. Rather, it is the synergistic relationship of multiple separate circumstances that Ms. Johnson confronted—an unmarked, unsecured staircase door with no light switch on the exterior of the door; a staircase door that swung inward; and a staircase with neither a top landing nor railings. There was no notice on the door indicating a staircase was behind it. Although the Mosses felt

11

they had secured the staircase by putting a deadbolt lock on the staircase door, it is undisputed the key was on the door when Ms. Johnson encountered it. Whether the door was locked at the time Ms. Johnson encountered it is unclear. Ms. Moss testified that she did not unlock the door. Ms. Johnson testified that she could not recall if she unlocked or simply opened the door. Regardless, the key was on the door, resulting in the staircase door being unsecured.

This court has recognized that when, as here, the complained-of-condition consists of a cluster of contemporaneously existing circumstances, the complained-of-condition may neither be open and obvious nor unreasonably dangerous. A trio of this court's cases demonstrate this scenario: [11]

- *Warren v. Kenny*, 10-1580, p. 10 (La. App. 4 Cir. 4/27/11), 64 So.3d 841, 849 (observing that granting defendant's summary motion was error given that "the risk of climbing a ladder up the side of a building to a second floor balcony while carrying a basket of laundry might reasonably be deemed an open and obvious danger. . . [but] the impermanent manner in which the balcony railing was secured in this case was not an open and obvious danger");[12]

---

[11] Prior jurisprudence remains relevant in analyzing this issue. The Supreme Court, in *Farrell*, acknowledged that its decision was meant only to clarify the analytical structure for considering the open and obvious defense and that it was not meant to change the basic premise of open and obvious. *Farrell*, 22-00849, p. 13, ___So.3d. at ___, 2023 WL 2550503, *8. The Supreme Court observed that the basic open and obvious premise has always been as follows:

> For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous.

*Id.*

[12] In *Warren*, *supra*, the plaintiff—a defendant's tenant—fell while descending a ladder carrying a laundry basket. The plaintiff had gone up the ladder to the second floor balcony, which was the location of the community laundry facility for the defendant's apartment. The sole access to the laundry facility was by climbing a ladder. The plaintiff's fall occurred when the balcony railing came loose. The trial court granted the defendant's summary judgment motion, which was based on open and obvious defense—that dangers of using the ladder were open and obvious. This court reversed.

- *Jones v. Stewart*, 16-0329 (La. App. 4 Cir. 10/05/16), 203 So.3d 384 (observing that granting defendant's summary motion was error given that condition in homeowner's attic was not necessarily an open and obvious risk considering other conditions existing contemporaneously—homeowner's attic was unfinished, unlit, and wet); and

- *Lomax v. Transdev Servs., Inc.*, 20-0620 (La. App. 4 Cir. 10/20/21), 331 So.3d 368, *writ denied*, 21-01737 (La. 2/8/22), 332 So.3d 668 (observing that granting summary judgment was error given the overall circumstances regarding the mechanic's pit—a three to four foot gap created by the presence of the bus parked partially over the uncovered mechanic's pit coupled with the proximity of the mechanic's pit to the walking area).

Here, Ms. Johnson was unaware of the existence of a staircase behind the unmarked door until she opened the door away from her, took her first step, and fell. A commentator has observed that "[a] doorway opening directly (without a platform at the top) onto dark stairs" is an example of a "trap" situation. 11 Am. Jur. Trials 265 (Originally published in 1966); *see also Weiland v. King*, 281 So.2d 688, 691 (La. 1973) (observing "the absence of stairway lighting and the absence of handrails at the second-floor landing combined to create a dangerous trap for one descending the stairs"). This situation presents a hidden and concealed danger. "'Hidden and concealed dangers are the antithesis of open and obvious dangers.'" *Stewart*, 16-0329, p. 26, 203 So.3d at 399. (quoting *Aaron v. Palatka Mall, L.L.C.*, 908 So.2d 574, 579 (Fla. Dist. Ct. App. 2005)).

Again, the complained-of-condition Ms. Johnson confronted included a cluster of contemporaneously existing circumstances; it was not limited to the darkness. While the darkness in the staircase may have been obvious, because of the darkness, the presence of the staircase and the lack of a landing or stair rails was not obvious. *See Stewart*, 16-0329, p. 26, 203 So.3d at 400 (observing that "[w]hile the darkness of the attic may have been obvious, because of the darkness, the wetness of the joists was not obvious"). There is, at least, a genuine issue of

material fact as to whether the complained-of-condition here was open and obvious to all comers.

The Step-into-the-Dark

The second factor the trial court cited was Ms. Johnson's unreasonable conduct in stepping into the dark without looking for the light switch. The trial court's reliance on this factor is misplaced, factually and legally. Factually, although the trial court suggested that Ms. Johnson did not attempt to look for the light switch before stepping into the dark, her testimony was otherwise.[13] Legally, the trial court's reliance on Ms. Johnson's stepping in the dark invoked—albeit not by name—a no-longer viable, step-in-the-dark rule. This rule is a product of the former contributory negligence regime; under the current comparative fault regime, this rule is inapposite.[14] Moreover, Ms. Johnson's comparative fault is not

_____

[13] In her deposition, Ms. Johnson testified that she looked for a light switch, but she failed to find one:

> Q. Okay. Okay. So where did you look for a light switch?
>
> A. There was none on the outside of the door. When I opened the door, reached in the inside of the wall to feel for a light switch. I didn't feel for one, but upon stepping and reaching, I went down.

Continuing, Ms. Johnson testified that her first step was her "fatal step."

[14] The step-in-the-dark rule was as follows:

> A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eye-sight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. Violation of that rule is contributory negligence as matter of law.

*Kessler v. Southmark Corp.*, 25,941, p. 3 (La. App. 2 Cir. 9/21/94), 643 So.2d 345, 348 (internal citation and quotation omitted). The step-in-the-dark rule was an affirmative defense under the previous contributory negligence regime. But, it should not "increase the plaintiff's burden under the current comparative fault regime." *Kessler*, 25,941, p. 5 (La. App. 2 Cir. 9/21/94), 643 So.2d 345, 349; *see also Spahr v. Ferber Resorts, LLC*, 419 Fed.Appx. 796, 803 (10th Cir.2011) (observing that "[t]ellingly, there are no post-comparative fault cases applying the [step-in-the-dark] rule—and indeed there are none, because the rule was abandoned in 1973 along with the rest of the old contributory negligence regime").

at issue here. *See Farrell*, 22-00849, p. 14, ___ So.3d ___, ____, 2023 WL 2550503, *8 (observing that "[a]lthough it would be relevant in a trial on the merits, for purposes of potential comparative fault, [the plaintiff's] awareness is irrelevant to Defendants' entitlement to summary judgment").

Accordingly, we find the likelihood and magnitude of harm created by the complained-of-condition was significant and, in the balancing test, weighs in favor of a finding that the premises was unsafe.

*Part Three—Cost of Preventing the Harm*

Ms. Johnson contends that the cost to the Mosses of preventing the harm by marking the staircase door, warning of the staircase behind the door, or changing the direction that the door swings would be minimal. Ms. Johnson's expert states in his report, quoted elsewhere in this opinion, that "a warning to indicate to users of the stairs that no landing was present or addition of handrails would have been relatively simple additions to the stairwell to improve the safety." The record, however, lacks any evidence to establish the actual monetary cost of avoiding the harm.

Nonetheless, Ms. Moss testified regarding the measure that she took to avoid the risk of falling, which included keeping the staircase door closed and locked as well as pointing out the staircase to prospective tenants. Indeed, Ms. Moss testified that she instructed prospective tenants not to leave the key to the deadbolt lock on the staircase door. Rather, she instructed them to put that key elsewhere—on their key ring or in a drawer. Keeping the door locked and the key elsewhere would not have cost anything and could have prevented the harm. This element, in the balancing test, weighs in favor of a finding that the premises was unsafe.

*Part Four—Nature of Plaintiff's Activities in Terms of Social Utility or Whether the Activities were Dangerous by Nature*

Ms. Johnson points out that she was simply walking around and observing the Rental Unit that her son was about to rent. In so doing, she simply opened a door. She further points out that she was not engaged in any dangerous or unusual activities when she fell. While the social utility of a mother checking out the apartment her son is getting ready to move into may be important and is not dangerous in nature, it does not weigh heavily as a consideration in determining if the premises was unsafe.

Summarizing, application of the risk/utility balancing test here demonstrates that reasonable persons could disagree on whether the complained-of-condition created an unsafe premises—an unreasonable risk of harm. Thus, Defendants failed to demonstrate the absence of a genuine issue of material fact on this ground. Since Defendants failed to meet their initial burden of proof, the burden never shifted to Ms. Johnson to show support for her claim. *See* La. C.C.P. art. 966(D)(1).

Nonetheless, Defendants assert two alternative grounds on which they contend the trial court's judgment should be affirmed: (i) Ms. Johnson's status as a trespasser; and (ii) Mr. Johnson' assumption in the Lease of liability for defects under La. R.S. 9:3221.[15] We separately address each of these grounds.

*Trespasser*

---

[15] Contrary to Ms. Johnson's contention, Defendants' failure to appeal or answer her appeal does not preclude this court's consideration of these arguments. These other grounds for affirming the trial court's judgment may properly be considered on appeal because Defendants do not "seek to have the judgment modified, revised or reversed, but merely affirmed for alternate reasons." *Barr v. Smith*, 598 So.2d 438, 440, n. 2 (La. App. 2d Cir. 1992) (citing La. C.C.P. Art. 2133 and *Clark v. McDonald's System, Inc.*, 383 So.2d 61 (La. App. 2d Cir. 1980); *Pernia v. Trail*, 519 So.2d 231 (La. App. 5th Cir. 1988)).

Defendants contend that Ms. Johnson was unlawfully on the Mosses' property on the day of the accident. For that reason, they contend that she was a trespasser and that they owed her no duty other than to refrain from willful or wanton injury. We find this argument unpersuasive. The jurisprudence is well established that "[t]he duties of the landowner for the purpose of determining liability in negligence actions . . . are no longer defined in terms of the status of the person entering the land." *Barcia v. Keil's Estate*, 413 So.2d 241, 243 (La. App. 4th Cir. 1982) (citing *Cates v. Beauregard*, 328 So.2d 367 (La.1976)). The proper test is "whether in the management of his property [the landowner] has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." *Cates*, 328 So.2d at 371 (internal citation and quotation omitted). It is no longer necessary to determine the plaintiff's status for purposes of defining the landowner's duty. Defendants' argument that a more stringent— willful and wanton injury—duty applies here, thus, is unpersuasive.

*Assumption of Liability in the Lease*

Defendants' final argument is that in Clause 11 of the Lease, Mr. Johnson assumed responsibility for the Rental Unit's condition under La. R.S. 9:3221.[16]

---

[16] As noted elsewhere in this opinion, the Lease, in Clause 11, states that "Tenant has examined the premises, including appliances, fixtures, carpets, drapes, and paint, and has found them to be in good, safe, and clean condition and repair, except as noted in the Landlord-Tenant Checklist." The Lease in Clause 11 also states that Johnson should "(1) keep the premises clean, sanitary, and in good condition… [and] (2) immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware…"

Assuming that an assumption of liability occurred, Defendants contend that the issue becomes whether the Mosses knew or should have known of any alleged defect or were notified of any alleged defect. Both Mr. and Ms. Moss testified in their depositions that no one had ever fallen or tripped down the stairway. The unit inhabited by the Mosses, 4330 Banks Street, was  a

17

Defendants reliance on La. R.S. 9:3221 is misplaced. The language of the Lease was insufficient to fall within the parameters of the statute. Mr. Johnson's agreement to "keep the premises clean, sanitary, and in good condition" was insufficient to equate to an assumption of responsibility for the condition of the Rental Unit under La. R.S. 9:3221. *See Wells v. Norris*, 46,458, p. 7 (La. App. 2 Cir. 8/10/11), 71 So.3d 1165, 1170 (observing that "[lessee's] agreement to 'maintain the house in good repair' does not equate to his assumption of responsibility for the condition of the premises leased as contemplated by La. R.S. 9:3221"). Thus, Defendants' contention that Mr. Johnson assumed responsibility under La. R.S. 9:3221 is unpersuasive.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed; and this matter is remanded to the trial court.

**REVERSED AND REMANDED**

---

mirror image of the apartment where the incident occurred. Since purchasing the building in 2006, the Mosses were never told that the stairway was potentially dangerous, nor had any incident occurred during the fourteen years that they owned the building, which would place them on notice of any alleged defect in the stairway. Thus, Defendants contend that the Mosses had no reason to believe that the stairway could result in injury. Given the Mosses had no reason to believe the stairway was allegedly unsafe, and as liability for any accidents on the premises were transferred to Johnson, Defendants contend that dismissal of Plaintiff's claims against the Mosses would have also been proper on this basis.