Judge Rosemary Ledet
11 This is a personal injury suit arising out of a slip and fall in an unlit, unfinished, wet attic of a house. The plaintiff, Glenn Jones, commenced this suit against two groups of defendants: (i) the “Homeowner Defendants” — the homeowner, Tammy Stewart; and Ms. Stewart’s insurer, Access Home Insurance Company; and (ii) The “Contractor Defendants” — the seller of the new, leaking roof on Ms. Stewart’s house, Sears Home Improvement Products, Inc. (“SHIP”); the installer of the *386 roof, Magnolia Roofing and Exteriors, Inc. (“Magnolia”); and the inspector of the roof, Crawford & Company, doing business as Strategic Warranty Services (“Crawford”). From the trial court’s judgment granting the Contractor Defendants’ motions for summary judgment and denying Mr. Jones’ motion for new trial, Mr. Jones appeals.[1] One of the Contractor Defendants, Magnolia, answered the appeal. For the reasons that follow, we decline the relief requested in Magnolia’s answer, reverse the trial court’s judgment, and remand for further proceedings.
I {.FACTUAL AND PROCEDURAL BACKGROUND
On August 19, 2011, Ms. Stewart contracted with SHIP to replace the roof on her house located at 4611 Lennox Boulevard in New Orleans, Louisiana. Shortly thereafter, SHIP’S subcontractor, Magnolia, installed the new roof. On September 30, 2011, Ms. Stewart signed a Certificate of Completion of Installation of the Roof, attesting that Magnolia had completed the job. Precisely when water began leaking into the attic of Ms. Stewart’s house is unclear. Nonetheless, Ms. Stewart expressed dissatisfaction with the roof from the outset. In response, in October and November 2011, SHIP sent another subcontractor, Crawford, to inspect the roof. Crawford found only cosmetic issues, and SHIP sent Magnolia to correct those issues. On August 2012, Hurricane Isaac struck the New Orleans area.
In early January 2013, Ms. Stewart noticed that water was leaking through the light fixture of a chandelier located in the entrance foyer of her house. She also noticed that one or more shingles were missing on her roof. Believing the leak in her roof was covered under warranty, she contacted SHIP and requested that it inspect and repair the roof. SHIP scheduled an inspection for the morning of January 10, 2013. Because Ms. Stewart had to work that day, she requested that her personal friend, Mr. Jones, meet the SHIP inspectors at her house. As a personal favor, Mr. Jones agreed to do so. In preparation for the inspection, Ms. Stewart showed Mr. Jones where the attic access was located on .the second floor of her house.
|aOn the morning of January 10, 2013, Mr. Jones met Ms. Stewart at her house; and Ms. Stewart left to work. At that time, water was still dripping from the chandelier; and water damage was visible on thé ceiling area surrounding the chandelier. According to Mr. Jones’ deposition testimony, two Hispanic males, neither of whom he could identify by name, arrived at about 9:00 a.m. The men identified themselves as SHIP’S representatives. The men informed Mr. Jones that they did not have the shingles to repair the roof and that they would have to come back. Nonetheless, the men informed him that they would put a tarp on the roof. One of the men went to get the tarp; the other man (later identified as Moisés Silva) accompanied Mr. Jones to the attic.
The attic access was a pull down stair type located on the second floor of Ms. Stewart’s house. The attic itself was unfinished; it did not have floorboards. The spacing between the attic joists was twenty-four inches, and the attic floor was sprayed with insulation. Mr. Jones indicated that all the joists he walked on appeared to be the same distance apart. The precise height of the attic is unknown; however, Mr. Jones indicated that he was able to stand up the entire time when he *387 was walking in the attic. The attic did not have any lighting.
Mr. Jones entered the attic first. Although Mr. Jones understood that Mr. Silva was going to follow him into the attic, Mr. Silva failed to do so. Instead, Mr. Silva stayed at the entrance access to the attic the entire time. Mr. Jones explained that he had to walk on the attic joists to get from the back of the house, where the attic access was located, to the front of the house, where the leak was located^ He | .[further explained that he slipped when he pivoted to point out to Mr. Silva where the leak was located. According to Mr. Jones, he had both his feet on one joist, one hand under the decking' of the roof, and the other hand holding his cell phone when he slipped. Mr. Jones testified that he was “pretty sure” that he did not misstep and actually step on the sheetrock. Rather, he testified that he slipped and fell off the joist through the sheetrock and onto the foyer floor sixteen feet below.
As noted at the outset, Mr. Jones filed suit against multiple defendants, including the Contractor Defendants.[2] Mr. Jones alleged that the accident and his resulting injuries were caused by, among other things, “[t]he premature failure of the roof causing] the attic joists to be wet, slippery and unreasonably dangerous.”[3] After filing an answer to the petition denying liability and conducting discovery, each of the three Contractor Defendants filed a motion for summary judgment on the issue of their direct liability to Mr. Jones. The trial court granted each of their motions and denied Mr. Jones’ motion for new trial. This appeal followed. Before addressing the merits of this appeal, we first address two issues regarding the decretal language in the trial court’s judgment granting the Contractor Defendants’ motions for summary judgment.
JjjDECRETAL LANGUAGE
“Decretal language” is defined as “the portion of a court’s judgment or order that officially states (‘decrees’) what the court is ordering” and generally starts with “the formula ‘It is hereby ordered, adjudged, and decreed that ....’” Hon. Jon O. Newman, Decretal Language: Last Words of an Appellate Opinion, 70 Brook. L. Rev. 727 (2005). Here, the decretal language that requires special consideration states as follows:
IT IS ORDERED, ADJUDGED, AND DECREED THAT the Motions for Summary Judgment as to liability on the main demand filed by [the Contractor Defendants] ... are each granted on the basis that no duty exists to protect the plaintiff from, an open and obvious condition. For this reason alone, all claims and causes of action asserted by the Plaintiff in this proceeding against [the Contractor Defendants] are dismissed with prejudice, each party to bear his/her/its own costs of court. All other arguments for Summary Judg- *388 merit as to liability are deferred. (Emphasis supplied.)[4]
The first issue presented by the decretal language arises from the limitation on the scope of the summary judgment on liability. to the issue of the application of the open and obvious doctrine. A review of the record reflects that the trial court, at the request of one of the Contractor Defendants (Magnolia), included the limitation in the judgment itself, as opposed to only in the reasons for judgment. The intent, [fias evidenced by Magnolia’s motion seeking such a limitation, was to preclude any other issue supporting the granting of the motions for summary judgment on liability from being considered on appeal, especially the issue of ease of association. As Magnolia pointed out in its motion, “the trial court did not render a judgment on the issue of ease of association between the workmanship of Crawford and/or Magnolia and the plaintiffs alleged injuries.” The rationale was that the trial court, in ruling in favor of each of the Contractor Defendants, only reached the issue of the application of the open and obvious doctrine. None of the parties voiced an objection on the record to the limitation. Given the limitation appears in the judgment itself, we find it appropriate to limit our review on appeal to the issue of the application of the open and obvious doctrine. See La. C.C.P. art. 2164 (providing that “[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.”).
The second issue presented by the de-cretal language is raised in Magnolia’s answer to the appeal, which we address next.
ANSWER TO THE APPEAL
Magnolia’s answer to the appeal is based on the decretal language ordering “each party to bear his/her/its own costs of court.” Magnolia seeks a modification of the judgment to cast Mr. Jones with all costs of court, including the costs for defending this appeal. Because we reverse the judgment of the trial court and remand for further proceedings, we decline to modify the trial court’s judgment | pasting costs on each party. We likewise refuse Magnolia’s request for an award of costs for defending this appeal.
SUMMARY JUDGMENT STANDARD
The well-settled standard of review of a trial court’s ruling granting a motion for summaiy judgment is as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the *389 affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim.
Ducote v. Boleware, 15-0764, p. 6 (La.App. 4 Cir. 2/17/16), — So.3d -, -, 2016 WL 659022, pp. *3-4, writ denied, 16-0636 (La. 5/20/16), 191 So.3d 1071.[5]
IsThe jurisprudence has recognized that “[d]espite the legislative mandate that summary judgments are favored, any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.” Bridgewater v. New Orleans Reg’l Transit Auth., 15-0922, pp. 5-6 (La.App. 4 Cir. 3/9/16), 190 So.3d 408, 412, writ denied, 16-0632 (La. 5/20/16), 191 So.3d 1071 (citing Willis v. Medders, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050; FMC Enterprises, L.L.C. v. Prytania-St. Mary Condominiums Ass’n, Inc., 12-1634, pp. 6-7 (La.App. 4 Cir. 5/15/13), 117 So.3d 217, 222-23; Windham v. Murray, 06-1275, p. 3 (La.App. 4 Cir. 5/30/07), 960 So.2d 328, 331). The determination of whether a fact is material turns on the applicable substantive law. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. Mr. Jones’ claims against the Contractor Defendants are solely negligence claims. See La. C.C. art. 2315 (providing that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”).
DISCUSSION
In addressing negligence claims, Louisiana courts employ a duty-risk analysis under which a plaintiff must prove the following five elements: 1) the defendant’s *390 duty of care to the plaintiff; 2) the defendant’s breach of that duty; 3) cause-in-fact; 4) legal causation (scope); and 5) damages to the plaintiff caused by |athat breach. Davis v. Witt, 02-3102, 02-3110, p. 11 (La. 7/02/03), 851 So.2d 1119, 1127 (citing Roberts v. Benoit, 605 So.2d 1032 (La.1991), on reh’g, 605 So.2d 1050, 1051 (La.1991)). If a plaintiff fails to prove any one of the five elements, a defendant will not be held liable, Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633; Pitre v. Louisiana Tech Univ., 95-1466, 95-1487, p. 9 (La. 5/10/96), 673 So.2d 585, 590.
The Louisiana’ Supreme Court has held that the threshold issue in all negligence actions is whether the defendant owed- the plaintiff a duty. Ponceti v. First Lake Properties, Inc., 11-2711, p. 2 (La. 7/2/12), 93 So.3d 1251, 1252 (citing Meany v. Meany, 94-0251, p. 6 (La. 7/5/94), 639 So.2d 229, 233). Whether the defendant owed the plaintiff a duty is a legal question for the court to decide. Pon-ceti, supra (collecting cases). The legal question is whether the plaintiff has any law — statutory or jurisprudential — to support his claim that the defendant owed him a duty. Faulkner v. The McCarty Corp., 02-1337, pp. 4-5 (La.App. 4 Cir. 6/11/03), 853 So.2d 24, 28. Absent a duty to the plaintiff, there can be no actionable negligence and, hence, no liability. Bridgewater, 15-0922 at p. 10, 190 So.3d at 415.
As noted, the trial court granted the Contractor Defendants’ motions for summary judgment based solely on its finding that the open and obvious doctrine applied and that the Contractor Defendants therefore owed no duty to Mr. Jones. Mr. Jones contends that the trial court erred in applying the open and obvious doctrine, legally and factually. Legally, he contends that the open and obvious Imdoctrine is unavailable to the Contractor Defendants because they were not the premises, owner. Stated otherwise, he contends that the open and obvious doctrine only applies to premises liability claims, not to ordinary negligence claims such as presented here. He further contends that “[t]he Contractor Defendants owe a duty to all third-parties, including [him], to properly install or inspect the roof to ensure that water did not enter the Stewart home.” Factually, he contends that the complained-of condition was not open and obvious. In support, he points out that “[w]hile the darkness of the attic may have been obvious, because of the darkness, the wetness of the joists was not obvious.”
The Contractor Defendants, on the other hand, contend that the trial court correctly classified the complained-of condition as open and obvious. They also point out that Mr. Jones fails to cite any legal support for his argument that the open and obvious doctrine applies only to premises liability claims. They argue that -the jurisprudence has not so limited the open and obvious doctrine.
We find it unnecessary to resolve the legal issue of whether the open and obvious doctrine is limited to premises liability claims.[6] Assuming the open and obvious *391 doctrine applies to the instant negligence claims based on the complained-of condition of the attic,[7] we find the Contractor Defendants failed to establish their prima facie entitlement to judgment as a matter of law. They failed to demonstrate that the complained-of | n condition — the unfinished, unlit, wet attic — was open, obvious, and not unreasonably dangerous. Given this finding, we pretermit all Mr. Jones’ other arguments.[8]
I ii>0ur finding that the Contractor Defendants failed to establish a prima facie case is based on an analysis of the law regarding the open and obvious doctrine and the evidence presented to the trial court on the motions for summary judgment. We separately address each of those two considerations.

The law on the open and obvious doctrine

This court set forth the “legal contours of the open and obvious to all de *392 fense” in Scarberry, 13-0214 at pp. 7-11, 136 So.3d at 203-05. There, we noted that the Supreme Court in Broussard v. State of Louisiana, Office of State Bldgs., 12-1238 (La. 4/5/13), 113 So.3d 175,[9] indicated that “the issue of whether a condition constitutes an open and obvious hazard is properly raised in connection with the risk-utility analysis employed, in deciding whether an owner of a thing is | ^responsible for injuries caused by a hazardous condition or defective component.” Scarberry, 13-0214 at p. 8, 136 So.3d at 203.[10] Continuing, we noted:
Under Louisiana law, a defendant generally does not have a duty to protect against an open and obvious hazard. See, e.g., Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 9 (La.2/20/04), 866 So.2d 228, 234. In order for a hazard to be considered open and obvious, the Supreme Court has consistently stated the hazard should be one that is open and obvious to all, i.e., everyone who may potentially encounter it. See, Murray v. Ramada Inns, Inc., 521 So.2d 1123, 1136 (La.1988) (“[A] potentially dangerous condition that should be obvious to all corners is not, in all instances, unreasonably dangerous.”). In Broussard, the Supreme Court acknowledged those critics, like the trial judge in this case, who assert that the “open and obvious” argument suggests a disguised application of contributory negligence or assumption of the risk doctrines, by observing that, “when the risk is open and obvious to everyone, the probability of injury is low and the thing’s utility may outweigh the risks caused by its defective condition.” 12-1238, pp. 10-11, 113 So.3d at 184. The Court further observed that the open and obvious to all issue, unlike assumption of the risk doctrine, “focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim’s actual or potentially ascertainable knowledge.” Broussard, 12-1238, p. 18, 113 So.3d at 188.
The jurisprudence, accordingly, provides that if the facts and circumstances of a particular case show a dangerous condition that should be open and obvious to all who encounter it, then the condition may not be unreasonably dangerous and the defendant may owe no *393 duty to the plaintiff. See, e.g., Jimenez v. Omni Royal Orleans Hotel, 10-1647 (La.App. 4 Cir. 5/18/11), 66 So.3d 528.
Scarberry, 13-0214 at pp. 10-11, 136 So.3d at 204.
The Broussard case, however, left the jurisprudence with the following five “paradoxical principles”:
lul) Determining whether a duty is owed is a question law to be decided by the Court;
2) No duty is owed if a defect is open and obvious;
3) To determine whether a defect is open and obvious, one must apply the second factor of the risk-utility test;
4) The risk-utility test is used to determine whether a defect is unreasonably dangerous;
5) Determining whether a defect is unreasonably, dangerous goes to the factual question of whether a duty was breached,
Edmison v. Caesars Entm’t Co., Inc., 177 F.Supp.3d 972, 977-78 (E.D.La.2016), 2016 WL 1383645, p. *4.
Clarifying Broussard, the Supreme Court, in a trio of cases, held that, absent any material factual issue, the summary judgment procedure can be used to determine whether a defect is open and obvious and thus does not present an unreasonable risk of harm. Bufkin v. Felipe’s Louisiana, LLC, 14-0288 (La. 10/15/14), 171 So.3d 851; Rodriguez v. Dolgencorp, LLC, 14-1725 (La. 11/14/14), 152 So.3d 871; Allen v. Lockwood, 14-1724 (La. 2/13/15), 156 So.3d 650, 651.[11]
In the Bufkin case, the complained-of condition was a large construction dumpster owned by the defendant-construction company. The plaintiff-pedestrian was injured when he was struck by a bicyclist while attempting to cross a street in the New Orleans French Quarter (Conti Street), which was. located next to the dumpster. The plaintiff contended that the defendant created an unreasonable risk of harm to pedestrians by setting up a blind spot that , prevented pedestrians from | ^seeing oncoming traffic when crossing Conti Street. The defendant moved for summary judgment, arguing that it had no duty to the plaintiff. The trial court denied the motion. This court denied writs. The Supreme Court granted writs, reversed the trial court, and granted summary judgment in favor of the defendant. The Supreme Court held that the dumpster was open, obvious, and did not create an unreasonable risk of harm, and that the defendant thus owed no duty to the plaintiff. In so holding, the Supreme Court reasoned as follows:
[T]he evidence presented on motion for summary judgment established that any vision obstruction, caused by the dumpster, to a pedestrian crossing Conti Street at that mid-block location was obvious and apparent, and reasonably safe for persons exercising ordinary care and prudence. Moreover, because the size of the dumpster was comparable to a pick-up truck, this particular situation was of the type any pedestrian might encounter on a regular basis. Thus, we conclude that Shamrock [the defendant] had no duty to warn of the obstruction presented to pedestrians by its pick-up-truck-sized dumpster, a large inanimate object visible to all.
Bufkin, 14-0288 at p. 10, 171 So.3d at 858.
In reaching this conclusion, the Supreme Court stated in a footnote that its earlier *394 opinion in Broussard “should not be construed as precluding summary judgment when no- legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous.’' Bufkin, 14-0288 at p. 12, n. 3, 171 So.3d at 859.
In the Rodriguez case, the complained-of condition was a shopping cart in the defendant-store’s parking lot. The plaintiff-customer fell in the parking lot as a result of her foot coming into contact with the shopping cart. The trial court denied the defendant’s motion for summary judgment. The appellate court denied writs. 11fiThe Supreme Court granted writs, reversed the trial court, and granted the defendant’s motion for summary judgment. In so doing, the Supreme Court reasoned as follows:
Courts have recognized that the mere presence of obstacles in a store, such as shopping carts, does not create an unreasonable risk of harm when the condition is open and obvious. See Russell v. Morgan’s Bestway of Louisiana, LLC, 47, 914 at p. 8 (La. App. 2 Cir. 4/10/13), 113 So.3d 448, 453 (holding “[e]ven though there were multiple stocking carts involved, we find this situation so open and obvious that [the plaintiff] was able to observe the carts and easily avoid any risk of harm”). In the instant case, defendant established plaintiff was aware of the presence of the shopping cart and could have avoided any harm through the exercise of ordinary care. The burden then shifted to the plaintiff to come forward with evidence (by affidavit, deposition, discovery response, or other form sanctioned by La. Code Civ. P. arts. 966 and 967) to demonstrate that she would be able to meet her burden at trial to show a duty on the part of defendant. Plaintiff failed to produce any evidence showing she could meet her burden at trial. Therefore, summary judgment in favor of defendant is mandated. See Bufkin v. Felipe’s Louisiana, LLC, 14-0288 (La.10/15/14), 171 So.3d 851.
Rodriguez, 14-1725 at pp. 1-2, 152 So.3d at 872.
In the Allen case, the complained-of condition was an unpaved, grassy parking area owned by the church defendants. An elderly church member struck the plaintiff with her vehicle when the church member was backing out of the parking area. The trial court denied the church defendants’ motion for summary judgment. Denying the church defendants’ writ, the appellate court cited Broussard for the proposition that the question of whether a defect presents an unreasonable harm should be decided by the fact-finder. The Supreme Court granted writs, reversed the trial court, and granted the church defendants’ motion for summary judgment. In so doing, the Supreme Court reasoned as follows:
117Broussard did not involve' summary judgment practice nor did our discussion infer that issues of this nature must be determined by a trial. Any reading of Broussard interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the Broussard case.
In another recent case, Bufkin v. Felipe’s Louisiana, LLC, 14-0288, p. 12, n. 3 (La. 10/15/14), 171 So.3d 851, 2014 WL 5394087, which involved the issue of whether a construction dumpster was open and obvious or posed an unreasonable risk of harm, we found defendants were entitled to summary judgment as a matter of law. ... As Buflcin demonstrated, “our jurisprudence does not preclude the granting of a motion for summary judgment in cases where the plaintiff is unable to produce factual sup *395 port for his or her claim that a complained-of condition or things is unreasonably dangerous.” Bufkin, 171 So.3d at 859, 2014 WL 5394087, at pp. *7-8 (Guidry, J., concurring); see also Reagan v. Recreation and Park Com’n for Parish of East Baton Rouge, 13-2761 (La. 3/14/14), 135 So.3d 1175 (Guidry, J., dissenting in writ denial). Rather, in such a procedural posture, the , court’s obligation is to decide “if there [is] a genuine issue of material fact as to whether the [complained-of condition or thing] created an unreasonable risk of harm....” Broussard, 12-1238 at p. 9, n. 5, 113 So.3d at 184, n. 5.
Turning to the instant case, the church defendants produced evidence, through affidavits, depositions, and photographs, that the parking area had been used by congregants for decades without incident and the complained-of condition — the unpaved grassy parking area — was obvious and apparent to anyone who may potentially encounter it. Plaintiff then failed to produce any evidence to rebut their evidence or demonstrate how the alleged defects caused the accident. Moreover, she could not even say what the church defendants did to cause the accident. Therefore, as there is no genuine issue as to-whether the parking area was unreasonably dangerous, the church defendants are entitled [to] summary judgment in their favor as a matter of law,
Allen, 156 So.3d at 652-53.
In this case, the complained-of condition was the unfinished, unlit, wet attic. Citing the Supreme Court’s trio of cases discussed above, the trial court found that the complained-of condition was open and obvious to anyone entering it and granted the Contractor Defendants’ motions for summary judgment. In its oral reasons for judgment, the trial court stated as follows;
| ^Although in opposition plaintiff relies upon Broussard v. State to support his position that whether a defect presents an unreasonable risk of harm or is an open and obvious hazard is a factual determination not appropriate for summary judgment, a review of Broussard progeny revealed that this proposition is incorrect. In Rodriguez v. Dolgencorp, the Louisiana Supreme Court held that where a defendant establishes a plaintiff was aware of the presence of a defect and could have avoided harm through the exercise of reasonable care, the burden then shifts to the plaintiff to produce evidence to demonstrate that he could meet his burden at trial to establish a duty on the part of the defendant.
.Where a plaintiff fails to meet his burden, summary judgment in favor of defendant is mandated. Bufkin v. Felipe’s Louisiana.
Most recently, in February of 2015, the Louisiana Supreme Court further expounded upon this issue in Allen v. Lockwood.
In sum, the Supreme Court’s trió of cases discussed above, as the trial court correctly noted, stands for the proposition that summary judgment may be granted based on the open and obvious doctrine in an appropriate case. Contrary to the trial court’s conclusion and the Contractor Defendants’ contentions, we find, given 'the evidence presented on the motions' for summary judgment (discussed below), this is not an appropriate case.

The evidence presented on the motions for summary judgment

The evidence presented on the Contractor Defendants’ motions for summary judgment reflects that, at the time of the accident, the following three conditions contemporaneously existed in Ms. Stewart’s attic: (i) unfinished, (ii) unlit, and (iii) *396 wet. We separately address the evidence as to each of these conditions.

Unfinished

Ms. Stewart described her attic as having unfinished flooring and blown insulation everywhere. Mr. Jones explained that he had to walk on the attic joists to 119get from the back of the house, where the attic access was located, to the front of the house, where the leak was located. Although there was insulation between the joists, Mr. Jones denied that any insulation was covering the joists on which he had to walk.

Unlit

Ms. Stewart testified that she did not tell Mr. Jones that there was no light in her attic because she thought the workers (the SHIP inspectors), not Mr. Jones, were going in the attic.[12] Mr. Jones testified that when he entered the attic, he assumed there was a light up there because “[m]ost places have some type of 'light fixture.” He testified that when he entered the attic, he looked for a light switch or some other sign of a light fixture; however, there was none. Rather than go back down to retrieve a flashlight, Mr. Jones and Mr. Silva decided to use the illuminations from their cell phones. Mr. Jones used the LED fighting of his phone; Mr. Silva used the flashlight application on his cell phone. According to Mr. Jones, he and Mr. Silva believed that their cell phones provided sufficient fighting. Mr. Jones indicated that there was additional natural fighting through the holes in the roof; he testified that he saw nails penetrating the decking and fight shining through. Nonetheless, Mr. Jones described the attic at the time of the accident as dark. Ms. Stewart likewise testified that “it’s hard to see in there.”

Wet

12pMr. Jones acknowledged that he was aware when he entered the attic that there was an active leak causing water to penetrate the foyer. Indeed, he testified that he went over to Ms. Stewart’s house two days before the accident and helped her place pots and pans under the chandelier in her foyer to catch the dripping water. He also acknowledged that he knew “[t]he only thing above where the water was coming in [was] the attic.” Given the presence of an active water leak, Mr. Jones conceded that he knew the attic would be wet before he went up there and that he “especially knew it would be wet in the area where the chandelier was because water had been running down the chandelier.”
Inside the attic, Mr. Jones acknowledged that he saw water coming through the underside of the roof decking above him; he testified that he “saw water coming from the fight that was coming through the wood where the nails were in the ceiling — I mean in the roof.” As to whether there was water on the joist on which he was walking, Mr. Jones’ testimony was as follows:
Q: Did you see any — was there any other water or moisture on the joists?
A: I tried to stop before where it actually was. So once I got to that joist and I could see it clearly, I turned to tell him this is where it was. So I did not see water directly where I was standing. It was all wet. You could see damp. It was all a different color, so I assumed water, but that was it.
Q: When you say it was all damp, it was all a different color, what are you talking about? ■
*397 A: When water hits wood, it’s darker.
Q: You’re saying the wood on the ground of the joists of the attic was a different color?
I ai A: Yes.
Q: Because earlier you — right before that you testified you didn’t see any or didn’t see any moisture on the joists.
A: I don’t see how you see moisture. I guess that’s where I was confused. I don’t know how you see moisture. All of the wood, the joists were dark brown from being wet.
Mr. Jones further testified as follows:
Q: In your complaint, you said what caused you to fall was the joists on the floor were wet and you slipped. Did you tell anybody that?
A. No, I said I slipped. I was up in the attic and I slip [sic] and I fell.
Q. So you didn’t tell anybody that the joists were wet?
A. No.
Q. How did you know that the joists were wet?
A. Because I was walking on them.
Q. You were walking on them to where you ultimately fell, you were walking on the wet joists?
A. In the area where I was standing. Of course, when I got in the attic, it wasn’t there. There was nothing there.
Q. But as you got there before you fell, you saw that the joists were wet?
A. Yes.
Q. And ... did you actually put your hand down and feel the joists?
A. No.
Q. Did you run your foot across it?
A. No. As I answered you earlier, I said it was a darker color because it was wet. Q. And you saw the difference in color with your cell phone?
19.9A. Yes.
Citing the evidence regarding the complained-of condition, the trial court, in granting the Contractor Defendants’ motions for summary judgment, orally reasoned as follows:
After a careful review of the record, including the deposition testimony of Mr. Jones and Ms. Stewart, as well as the affidavit of Ms. Stewart, this Court finds that, as in Desormeaux,[13] defendants established that Mr. Jones voluntarily entered the attic, was fully aware of the condition of the wet ceiling and joists, and took no measures to avoid harm by utilizing sufficient light to observe the wet joists or making a walkway over the joists. As a result, he lost his footing and fell. Consequently, the burden shifts to the plaintiff, who has failed to produce any evidence by affidavit, deposition, or discovery response to *398 show that he could meet his burden at trial and establish the duty element of his case. Plaintiff also fails to cite to any authority or facts.to dispute that the complained-of condition was open and obvious to anyone entering it. As such, plaintiff fails to establish an essential element of his claim — namely, the duty owed — which is fatal and mandates summary dismissal. Because plaintiff fails to establish the duty element' of his claim, this Court pretermits ruling on the legal cause element argued by defendants, such as ease of association.
As noted above, the Contractor Defendants, as the movers, had the initial burden of showing that no genuine issues of material fact exist. The Contractor Defendants failed to establish a prima facie case that the complained-of condition that allegedly caused Mr. Jones’ fall and resulting injuries was open, obvious, and |2!inot unreasonably dangerous. For this reason, we need not address whether Mr. Jones, properly rebutted the Contractor Defendants’, motion. See Marshall v. Jazz Casino Co., 15-1192, p. 6 (La.App. 4 Cir. 6/29/16), 197 So.3d 316, 320 (citing Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, pp. 6-9 (La. 2/20/04), 866 So.2d 228, 233-34 (motion for summary judgment must be “properly supported” before burden shifts to opponent)).
We acknowledge, as the Contractor Defendants point out, that an unfinished, unlit attic has been held to present an open and obvious condition.[14] Nonetheless, despite the presence of an open and obvious condition, the jurisprudence has recognized that “case-specific factual issues” may preclude summary judgment. Jimenez v. Omni Royal Orleans Hotel, 10-1647, pp. 11-12 (La.App. 4 Cir. 5/18/11), 66 So.3d 528, 534-35. In Jimenez, we explained this category of cases as follows:
There are other decisions which suggest that simply because a condition may be open and obvious it does not necessarily result in a consequential finding that the defendant did not create an unreasonable risk of harm. Thus, the Louisiana Supreme Court, while acknowledging the dangerousness of bundled electric cables placed in a pedestrian passageway at the Chalmette Crawfish Festival as well as a pedestrian’s duty to observe conditions as obvious to a visitor as to a landowner, found that case-specific factual issues precluded summary judgment. See Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 9 (La.2/20/03), 866 So.2d 228, 235. See also Warren v. Kenny, 10-1580 (La.App. 4 Cir. 4/27/11), 64 So.3d 841 (in which we | ^reversed the trial court’s summary judgment dismissing a tenant’s claims against her landlord whose ladder and railings giving access to laundry equipment were held to be open and obvious; we remanded because of genuine issues of material fact, observing that at trial a “substantial” portion of fault might be attributed to the tenant who chose to use that laun *399 dry equipment; knowing it was- in a precarious situation, i,e., “an open and obvious danger”).
Jimenez, 10-1647 at pp. 11-12, 66 So.3d at 534-35. This case falls into the category of cases involving “case-specific factual issues” precluding summary judgment.
Magnolia’s argument regarding the open and obvious issue demonstrates why this case falls into that category.[15] Magnolia argues that Mr. Jones is attempting to disregard his awareness" of the leak by mythologizing a “reasonable person” who was ignorant of the leak. Magnolia points out that this case is unique in that Ms. Stewart’s attic was not open to the general public. Magnolia explains that the only reason anyone would enter Ms. Stewart’s attic around the time of Mr. Jones’ accident would have been to inspect or repair the leak. Magnolia thus contends that “[a] reasonable person — who was entering the attic to show a leak to a repair person— would understand that a roof leak would logically result in water entering the attic through the leak; indeed it was apparent that water reached, thej^foyer below and could cause the inside of the attic to be wet and slippery. No one was entering the attic in ignorance of the leak.”
Magnolia also points out that the trial court’s written reasons for judgment, on the denial of the motion for new trial, establish that the' trial court understood this point; particularly, Magnolia cites the following statement by the trial court: “this Court’s ruling is not based on Plaintiffs subjective knowledge, but rather on objective factors that a reasonable prudent person entering the attic would observe and know.”[16] Continuing, Magnolia posits that “[a] reasonable person must be given the context and the knowledge that any person entering Tammy Stewart’s attic would possess” and that Mr. Jones’ “attempt to frame the ‘reasonable person’ differently does not fit the case.” As Magnolia’s argument demonstrates, the need to fit the reasonable person into the facts of *400 this case places this case squarely into the category of cases involving “case-specific factual issues” precluding summary judgment.
Nor is this a case involving a “large inanimate object visible to all,” like the dumpster in Bufkin, supra. Rather, the complained-of condition here is the synergistic relationship of three separate conditions existing in Ms. Stewart’s attic at the time of the accident — unfinished, unlit, and wet. The interaction of these 12fithree conditions gives rise to fact-specific issues. As Mr. Jones points out, “[w]hile the darkness of the attic may have been obvious, because of the darkness, the wetness of the joints was not obvious.” As one court has noted, “[hjidden and concealed dangers are the antithesis of open and obvious dangers.” Aaron v. Palatka Mall, L.L.C., 908 So.2d 574, 579 (Fla.Dist.Ct.App.2005).
Moreover, the evidence that was introduced on the Contractor Defendants’ motions for summary judgment further supports our finding that this case falls into the category of cases involving “case-specific factual issues” precluding summary judgment. Mr. Jones’ deposition testimony, quoted above, reflects that the extent to which he, or anyone else, was able to see that the joist — the surface — on which he was walking was wet is unclear. Indeed, he testified that he “tried to stop before where it [the leak and presumably the water therefrom] actually was.” Moreover, both Mr. Jones and Ms. Stewart testified that it was hard to see in Ms. Stewart’s attic.
In sum, the Contractor Defendants failed to establish a prima facie case that the complained-of condition was open and obvious; hence, the burden never shifted to Mr. Jones to rebut their motions. Although duty is a question of law, summary judgment on the issue of duty is proper “only where no duty exists as a matter of law and no factual or credibility disputes exist.” Parish v. L.M. Daigle Oil Co., Inc., 98-1716, pp. 10-11 (La.App. 3 Cir. 6/23/99), 742 So.2d 18, 25. Such is not the case here. Given the “case-specific factual issues” regarding the complained-of condition, summary judgment is precluded here. Jimenez, supra.
JgjDECREE
For the foregoing reasons, the judgment of the trial court is reversed. This case is remanded for further proceedings.
REVERSED AND REMANDED

. Although the trial court also granted the Homeowner Defendants’ motion for summary judgment, Mr. Jones filed neither a motion for new trial nor ah appeal from that judgment. That judgment is now final. The Homeowner Defendants thus are not parties to this appeal.

. Although Moisés Silva is also named , as a defendant, he is not a party to this appeal.

. In his petition, Mr. Jones alleged the accident occurred as follows:
While showing SHIP'S and/or Silva re-pairpersons where light was coming into the attic through holes in the roof, from damages sustained by the inadequate roof installed by Magnolia/SHIP, Mr. Jones slipped on the wet attic joists, and fell between the joists, through the sheetrock ceiling separating the attic and the foyer, 16 feet below to the ceramic tile floor; crushing a love seat with part of his body on his way to the floor and suffering severe bodily injuries, including a compound fracture of his arm, one or more ruptured vertebral disks, broken hips, a closed head injury, and numerous scrapes, bruises and abrasions.

. The decretal language here is sufficiently definitive to make the judgment dismissing the Contractor Defendants a final, appealable judgment. We npte, however, that the jurisprudence suggests that the decretal language should also specify the party against whom the ruling is ordered. See Bd. of Sup’rs of Louisiana State Univ. & Agric. & Mech. Coll. v. Mid City Holdings, L.L.C., 14-0506, pp. 2-3 (La.App. 4 Cir. 10/15/14), 151 So.3d 908, 910 (holding that " ‘[a] final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.’ ”) (quoting Palumbo v. Shapiro, 11-0769, p. 5 (La.App. 4 Cir. 12/14/11), 81 So.3d 923, 927) (quoting Input/Output Marine Sys., Inc. v. Wilson Greatbatch, Tech., Inc., 10-477, p. 13 (La.App. 5 Cir. 10/29/10), 52 So.3d 909, 916). This case, however, involves only a single plaintiff (Mr. Jones) against whom the ruling (the granting of the summaiy judgment motions) was ordered. The omission of such decretal language here was thus insignificant.

. In 2015, the Louisiana legislature revamped the article governing summary judgment, La. C.C.P. art. 966, "to provide for certain procedures at the hearing on a motion for summary judgment; to provide for the filing and consideration of certain documents; to provide for the burden of proof; and to provide for related matters.” 2015 La. Acts 422 (effective January 1, 2016). The Legislature expressly provided that the amendment did not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act. Because the Contractor Defendants’ motions for summary judgment were filed and decided before the effective date of the Act, we apply the former version of the article in this case.

. In denying Mr. Jones' motion for new trial, the trial court, in its written reasons for judgment, rejected this argument, reasoning as follows:
Plaintiff argues that while a homeowner may be absolved from liability for properly defects that are open and obvious to guests, contractors — such as SHIP, Crawford and Magnolia — are not privy to the same absolution because open and obvious is not applicable against contractors. (Emphasis added). Plaintiff fails to cite to any authority to support this contention. Indeed, in McCloud v. HANO and Boh Brothers Construction Company, LLC, [08-0094 (La.App. *391 4 Cir. 6/11/08), 987 So.2d 360], the Fourth Circuit expressly ruled to the contrary.

. A commentator points out that this court suggested in Scarberry v. Entergy Corp., 13-0214 (La.App. 4 Cir. 2/19/14), 136 So.3d 194, writs denied, 14-0566, 14-0599 (La. 5/16/14), 139 So.3d 1026, the scope of the application of the open and obvious doctrine is limited to cases involving a defect. H. Alston Johnson, III, 18 LA. CIV. L. TREATISE, CIVIL JURY INSTRUCTIONS § 3:16 (3d ed. 2015). Addressing that issue, the commentator states as follows:
The appellate court in Scarberry read Broussard [v. State of Louisiana, Office of State Buildings, 12-1238 (La. 4/5/13), 113 So.3d 175,] to mean that "open and obvious danger” was only applicable to "defect” cases under Article 2317 and 2322, and thus concluded that since the claim in Scar-berry was not based on those articles, "open and obvious danger” was "inapplicable to the issues to be resolved by the jury.” ...
With all respect, Broussard should probably not be read so narrowly. The1 Supreme Court in Broussard did not appear to limit its rationale to "defect” cases, although admittedly the case before.it was a "defect” case.
Id. Our research has revealed that at least one other jurisdiction has held that the open and obvious doctrine does not apply to ordinary negligence claims. Hiner v. Mojica, 271 Mich.App. 604, 615, 722 N.W.2d 914, 922 (2006) (holding that "the applicability of the open and obvious danger doctrine depends on the theory underlying the negligence action” and that “[t]he doctrine applies to an action based on premises liability, but not ordinary negligence."). Whether the open and obvious doctrine is so limited in Louisiana is an issue we find unnecessary to resolve in this case.

. On appeal, Mr. Jones asserts the following six assignments of error:
1. The trial court improperly ruled that the hazard posed to Glenn Jones of wet and slippery attic joists in a dimly lit attic was "open'and obvious” to all, however; such a determination was not made following a full trial at which all evidence could be presented to the trier of fact to make that determination. That determination should be properly made by the trier of fact rather than be decided on summary judgment.
2. The trial court improperly granted Defendants’ Motions for Summary Judgment by weighing and deciding on factual issues; genuine issues of material fact that should have properly been reserved by the trier of fact.
3. The trial court erred in improperly applying contributory negligence principles to this case instead of comparative fault, thereby impermissibly and entirely barring Plaintiff's recovery.
4. The trial court erred in granting Magnolia’s Motion to Strike Exhibits attached to Plaintiff's Motion for New Trial, where those Exhibits helped to properly present a more complete factual picture for the court to hear Plaintiff’s Motion for New Trial.
5. The trial court erred in striking, sua sponte, Exhibits attached to Plaintiff's Motion for New Trial, where those Exhibits helped to properly present a more complete factual picture for the court to hear Plaintiff’s Motion for New Trial.
6. The trial court erred in denying Plaintiff's Motion for New Trial by not considering a full review of the factual circumstances to avoid a miscarriage of justice.

. In Broussard, the complained-of condition was a malfunctioning elevator, The plaintiff-UPS delivery man was injured while trying to maneuver a loaded dolly into an elevator that stopped a few inches above the lobby floor. After a jury trial, a judgment was rendered finding the malfunctioning elevator presented an unreasonable risk of harm and apportioning 62% fault to the defendant-elevator owner and 38% fault to the plaintiff-UPS delivery man. The appellate court concluded that the jury's factual determination that the elevator’s defective condition presented an unreasonable risk of harm was manifestly erroneous because the defect was open and obvious and thus reversed. The Supreme Court granted writs and reinstated the trial court’s judgment in accord with the juiy’s verdict. The Supreme Court found that the appellate court erred in reversing the juiy’s determination that the malfunctioning elevator created an unreasonable risk of harm — despite the fact that ⅛‡ plaintiff admitted he was aware of the malfunctioning elevator — because a reasonable jury could have determined that the danger posed by the elevator was not open and obvious to all who encountered it.

. The risk-utility analysis is comprised of four factors: 1) the utility of the complained-of condition; 2) the likelihood and magnitude of harm, including the obviousness and appar-entness of the condition; 3) the cost of preventing the harm; and 4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. Broussard, 12-1238 at p. 10, 113 So.3d at 184, The open and obvious to all issue is considered under the ■ second prong of the risk-utility analysis.

. See also Ludlow v. Crescent City Connection Marine Div., 15-1808 (La. 11/16/15), 184 So.3d 21, reh’g denied, 15-1808 (La. 1/15/16), 184 So.3d 702 (finding that ”[u]nder the facts of this case, relator owed no duty to plaintiff, as any danger was obvious and apparent to anyone who might potentially encounter it” and citing Allen, supra; and Bufkin, supra).

. Whether Ms. Stewart understood that Mr. Jones was going to go into the attic to show the SHIP inspectors the leak is disputed. Mr. Jones testified in his deposition that Ms. Stewart knew he was going into the attic. According to Ms. Stewart, Mr. Jones never told her that he was going to go into thé attic; and she never asked him to go into the attic.

. In Desormeaux v. Audubon Ins. Co., 611 So.2d 818 (La.App. 3d Cir. 1992), the complained-of condition was a poorly lit, cramped, wet attic. The roof repairer-plaintiff was injured when he slipped and fell on the wet attic joists. The roof repairer-plaintiff entered the attic that "was not floored, poorly lighted and only 4-4 ½ feet high” and that required the plaintiff to "balance himself on the joists which were 2 inches wide, 12 inches deep and 14-16 inches apart.” The accident occurred while the plaintiff was in the process of emptying a large wash tub that had been used to collect water from the roof leak that he was getting ready to repair. Reversing a judgment in the plaintiff's favor, the appellate court found that the danger encountered by the plaintiff was obvious and that the plaintiff took no measures to make the condition safe, such as adding lighting or making a walkway over the joists. Id. at 821. The appellate court determined that the condition of the property was not the cause-in-fact of the plaintiff’s fall; the court reasoned that but for the plaintiff's "unsafe manner in emptying the washtub by balancing himself on joists in a stooped position, in a poorly lighted area, carrying a bucket of water, he would not have fallen.” Id.

, See Meyer v. Tyner, 709 N.Y.S. 2d 618, 620, 273 A.D.2d 364 (N.Y.A.D. 2 Dept.2000) (holding, on summary judgment, that "[pjoor illumination and similarity of color between the insulation and the attic floor were insufficient to raise a triable issue of fact as to whether the unfinished nature of an attic floor was a dangerous condition”); Scott v. Norman, 391 S.W.2d 890, 895-96 (Mo.1965) (finding that an attic with unfinished flooring with joists spaced twenty-four inch apart was an "open and obvious" condition and-that “[tjhe risk involved in going upon them was that a person would slip therefrom and fall through the thin plasterboard ceiling”); Tracy v. Petrenas, 2005 WL 1812671, p. *2 (Mich.Ct.App.2005) (unpub.) (holding "the potential danger of walking in a darkened garage attic without a load-bearing floor should be apparent to an average person of ordinary intelligence.”).

. SHIP's argument likewise, albeit not as directly, recognizes the fact-specific factual issues in this case. Summarizing its argument, SHIP states in its brief the following:
Any reasonable person entering a house with an obvious, active water leak dripping from the ceiling of the foyer would be on notice that the attic space above would contain moisture. This is especially true of any reasonable person entering the attic for the purpose of searching for the1 source of an active leak from the ceiling of the home’s foyer. Any reasonable person would also notice that the subject attic was dark and that it did not have any flooring covering the attic floor joists.
Crawford’s argument centers on Mr. Jones’ subjective awareness of the risks. Crawford states in its brief the following:
By Appellant’s own admission, the visible discoloration of the wet wood,' the leaking of water from the attic, the darkness of the attic, and the presence of the sheetrock in between the attic joists were observable hazards he perceived and encountered pri- or to his fall. In sum, the leaking, dark attic and the wet joists certainly amounted to an open and obvious condition, the likes of which Crawford owed no duty to protect against.

. The trial court, in denying Mr. Jones’ motion for new trial, stated in its written reasons for judgment the following:
[Ms. Stewart] testified when she left her house on the date of the accident, water was visibly leaking from the ceiling. Additionally, among other things, the Court considered Plaintiff’s deposition testimony regarding his observation that when he entered the attic "all of the wood, the joists were dark brown from being wet.” Thus, this Court’s ruling [granting summary judgment] was not based on Plaintiff’s subjective knowledge, but rather on objective factors that a reasonable prudent person entering the attic would observe and know. Accordingly, based on the foregoing, the Court concluded that the wet attic condition was open and obvious to any reasonable person who may have entered it. ...